**Charles Leroy BECK, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–88–483.**

Court of Criminal Appeals of Oklahoma.

Dec. 31, 1991.

Rehearing Denied Feb. 4, 1992.

Thomas E. Salisbury, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Deputy Chief, Criminal Div., Lee S. McIntire, Legal Intern, Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge:

Appellant Charles Leroy Beck was tried by a jury and convicted for the crime of Sale of an Alcoholic Beverage to a Minor in violation of 37 O.S.Supp.1985, § 538(F), in the District Court of Delaware County, in Case No. CRF–85–139. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at a fine of Two Thousand Seven Hundred Fifty Dollars ($2,750.00), and the trial court sentenced Appellant accordingly. From this judgment and sentence Appellant perfects his appeal to this Court.

Because of the limited scope of the alleged error, only the facts relevant to the resolution of the issue presented will be discussed.

At approximately 7:30 p.m. on November 2, 1985, eighteen (18) year old Harold L. Mann, Jr. entered the Appellant's store, Charley's Pit Stop, to purchase a bottle of liquor. Charley's Pit Stop, also called The Sportsman's Mix Mart, is a combination liquor and convenience store. After picking up a bottle of Jack Daniels Tennessee Whiskey, Mann went to the counter, paid for the purchase and left.

Stoney Lee Gooding rode to the Pit Stop with Mann that evening, but remained in the vehicle while Mann went inside to make the purchase. Gooding testified that he had no knowledge concerning the transaction taking place inside the store. After leaving the liquor store, Mann and Gooding stopped at another convenience store, Bill's Corner, to purchase a couple of Pepsi Colas.

John T. Marion, an agent with the Alcoholic Beverage Law Enforcement (ABLE) Commission, was parked across the street from Charley's Pit Stop when he observed Mann in the store purchasing a bottle of liquor. He then observed Mann and Gooding leave the premises in a white Pinto. Suspecting Mann to be under age, Marion contacted the Delaware County Sheriff's Department and requested assistance in obtaining the age of the man he had observed buying the liquor.

Shortly after receiving this call, Deputies Sloan and Davis, of the Delaware County Sheriff's Department, observed a vehicle parked at Bill's Corner convenience store which met the description given by Marion. Deputies Sloan and Davis approached the white Pinto and asked the occupant, Stoney Lee Gooding, to turn over the bottle of whiskey. As Mann approached the vehicle, Gooding produced the opened bottle and the Deputies arrested both Gooding and Mann. Gooding was arrested for public intoxication and Mann for Possession of an Alcoholic Beverage by a Minor. Subsequently, Appellant was charged with the crime of Sale of an Alcoholic Beverage to a Minor.

At trial, Mann testified that Appellant never asked him his age or requested any identification, although he had his driver's license with him at the time. Appellant, on the other hand, testified that Mann presented identification which showed his age to be 21 years. However, Deputy Sloan testified that at the time of his arrest, Mann's only identification which reflected his age was a driver's license which showed him to be under 18 years of age.

The present appeal raises one issue for our consideration. Appellant alleges that his right to confrontation was violated because the evidence he was not allowed to present to impeach a State's witness was crucial to demonstrate the various concessions or leniency granted Mann by the State. In particular, he sought to introduce evidence about Mann's prior charges which had been dismissed. He also sought

to call the Court Clerk as a witness to show by extrinsic evidence that certain charges were not filed or were filed, and later dismissed against Mann. Finally, he contends that jury instruction No. 21 further compounded the error because it instructed the jury to disregard portions of Mann's testimony which were previously allowed.

At trial, Harold Lavern Mann, Jr. was cross-examined by defense counsel regarding any discussions of leniency as follows:

Mr. Oliver: Have they told you that they would show you any leniency or anything if you would testify here today?

Mann: Do what?

Mr. Oliver: Have the District Attorney, the police department, or any law enforcement officials, tell [sic] you that they would go easy on you if you would testify here today?

Mann: No.

Mr. Oliver: They haven't said that at all?

Mann: No.

Defense Counsel then attempted to question Mann regarding two felony charges which were dismissed in July of 1986. The State's objection to this line of questioning was overruled after some discussion out of the presence of the jury. Later, during the trial, the jury was admonished to disregard the testimony of the witness, Harold Lavern Mann, Jr., concerning any criminal charges that might be pending against him, any charges filed against him that were dismissed, and his conviction on the misdemeanor charge of possession of an alcoholic beverage by a minor. The judge further advised the jury that they were to disregard that testimony in evaluating the weight and credit to be given to the testimony of Mann and that they would be so instructed.

■ The Oklahoma Evidence Code strictly limits the type of evidence that is admissible to impeach the testimony of a witness. It particularly limits the use of specific instances of a witness's conduct for impeachment purposes. One section allows the use of a prior conviction as impeachment evidence pursuant to the criteria set forth in the statute. *See* 12 O.S.1981, § 2609. However, evidence of a prior arrest and dismissal of charges are not included within the definition of a prior conviction. Still another section of the code provides that specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, may not be proven by extrinsic evidence, other than by convictions of crimes as provided in Section 2609. 12 O.S.1981, § 2608(B). It should be noted, however, that this prohibition of the use of extrinsic evidence is restricted to the opinion or reputation evidence of truthfulness or untruthfulness.

■ Although evidence that impeaches a witness for bias is routinely admitted, it is not regulated by any provision of the Evidence Code. However, in practice, this type of evidence is permitted under common law principles. Recognizing that the principles surrounding the introduction of bias evidence derive from the right of confrontation (as found in the United States Constitution amendment VI, and the Oklahoma Constitution art. II, § 20), this Court has construed this right liberally. *See, e.g., Lankister v. State,* 298 P.2d 1088 (Okl.Cr. 1956); *Blumhoff v. State,* 72 Okl.Cr. 339, 116 P.2d 212 (1941).

■ Unlike the strict restrictions placed on most other forms of impeachment evidence, a witness may be cross-examined about any matter tending to show his bias or prejudice. *See, e.g., Dunham v. State,* 762 P.2d 969, 973 (Okl.Cr. 1988); *Mills v. State,* 733 P.2d 880, 882 (Okl.Cr.1986); *Crawford v. State,* 688 P.2d 357, 360 (Okl.Cr.1984). In fact, "the prohibition against extrinsic evidence of specific instances of conduct found in Section 2608(B) is inapplicable to impeachment evidence which tends to show a witness' bias ...." *Fisher v. State,* 761 P.2d 900, 901 (Okl.Cr.1988). Nevertheless, we have permitted the use of extrinsic evidence to demonstrate bias despite the prevailing rule against its use. *See, Id.* at 901; *Rhodes v. State,* 695 P.2d 861 (Okl.Cr.1985). Clearly bias evidence is never collateral. Thus, our previous holding in *Woods v. State,* 657 P.2d 180, 182 (Okl.Cr.1983), that if a witness denies the bias impeaching conduct, counsel is bound by the answer given and

may not offer extrinsic evidence to contradict the witness is overruled to the extent it is in conflict with this opinion. The Court in *Woods* misapplied the Section 2608 procedure regarding opinion or reputation evidence of truthfulness or untruthfulness to evidence of bias.

 We also recognize and adhere to the view of the United States Supreme Court that the exposure of a witness' motivation in testifying is a proper important function of the constitutionally protected right of cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 683, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674 (1986); *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). Thus, a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness." *Delaware,* 475 U.S. at 680, 106 S.Ct. at 1436. This is especially true in situations where the relations between the witness and the party to whom he serves is such that it may lead the witness to slant his testimony in favor or against a party. *See Braden v. Hendricks,* 695 P.2d 1343, 1348 (Okl.1985).

We have no Oklahoma cases in which this Court explained how to reconcile a common law approach to admitting bias evidence in light of the present statutory scheme under the Oklahoma Evidence Code. However, the U.S. Supreme Court has provided a detailed analysis of this standard in *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 468–69, 83 L.Ed.2d 450 (1984). This determination stems from the right of confrontation under the Sixth Amendment, which grants a defendant wide latitude in cross-examining a witness. In *Abel,* the U.S. Supreme Court held that although the Federal Rules of Evidence do not discuss impeachment for bias explicitly, it is clear that the rules contemplate such impeachment. 105 S.Ct. at 468. In *Abel* it permitted bias evidence via Rule 402 (all relevant evidence is admissible). The Court also linked the doctrine of impeachment for bias with the Evidence Code by the Advisory Committee's Notes to Rules 608 and 610 (these rules do not prohibit inquiry into bias or interest), and the language of 607 (credibility of a witness may be impeached), and 611(b) (cross-examination may relate to matters affecting credibility of a witness). The Court also noted the common law rules of evidence in practice still exist under the Federal Rules of Evidence, although in altered form. *Id.* at 469. Because Oklahoma's evidence rules were adopted from the federal rules, we find that the U.S. Supreme Court's reasoning in *Abel* is applicable in Oklahoma, and hence in the case at bar.

 While we must look to the common law in determining the scope and procedure regarding use of bias evidence for impeachment, we must also seek to conform this evidence to the criteria enacted through the Oklahoma Evidence Code. The analysis utilized by the United States Supreme Court in *Abel* at pages 468 and 469 was subsequently suggested by Professor Whinery at 1 Okla.Evidence (Whinery) 202. Therefore, in adopting the *Abel* analysis we find it to be consistent not only with the application of the Federal Rules, but also the Oklahoma Evidence Code. The trial court in ruling on evidentiary issues regarding bias evidence for purposes of impeachment, and this Court in reviewing those rulings, shall determine: first, is the fact situation such that the showing of bias to impeach a witness is relevant under 12 O.S.1981, § 2401; second, is the evidence admissible under 12 O.S.1981, § 2402; and third, even though admissible, should it be excluded under 12 O.S.1981, § 2403. In addition, bias may be proved by extrinsic evidence and the cross-examiner is not required to merely "take the answer of the witness".

 In the present case defense counsel elicited from the witness that no one from the prosecutor's office or police department had indicated that he would receive favorable treatment for his testimony and that to the witness' knowledge, no deals had

been worked out for his testimony. Nevertheless, certain charges were either not filed or subsequently dropped before Appellant's trial. Near the conclusion of the evidence the trial judge admonished the jury to disregard evidence concerning the State's dismissal of charges previously filed. Although trial courts have the authority to impose limits on cross-examination, it is our opinion that the trial judge's restrictive limitations on defense counsel's cross-examination and the admonishment to disregard certain testimony in this case constituted error.

■ To determine whether or not this error is harmless, we look to the analysis set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Using this standard for review, we assess the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Delaware*, 475 U.S. at 684, 106 S.Ct. at 1438 citing *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

■ In the present case, Mann was the State's primary witness. In dispute is that portion of Mann's testimony concerning his identification. However, both the testimony of the arresting officers, as well as Agent Marion, served to corroborate Mann's statement regarding his identification. Specifically, that when Mann was arrested, his wallet only contained a driver's license showing his age to be 18 years, a social security card, and a certificate degree of Indian Blood.

In addition, the car passenger, Stoney Lee Gooding, testified that he had no knowledge of Mann having any other identification other than the one found on him at the time they were arrested. Finally, defense counsel questioned Mann regarding any agreements or deals that might have been offered him in exchange for his testimony. Applying the foregoing standard, we reach the conclusion that the restriction placed on defense counsel's cross-examination was harmless error because we do not believe that further testimony would impact on the results reached by the jury.

■ Finally, Appellant contends that the trial court erred by giving instruction twenty-one (21). However, he has failed to cite any relevant authority for his assertions. It has long been held in this Court that jury instructions are not to be considered in isolation but as a unit. Therefore, if the totality of the instructions fairly and accurately state the applicable law, they are sufficient. *Newbury v. State*, 695 P.2d 531 (Okl.Cr.1985); *Hines v. State*, 684 P.2d 1202 (Okl.Cr.1984).

Because of the foregoing findings, it is our opinion that giving Instruction No. 21 was not proper. However, we do not find it to be error because the totality of the instruction fairly and accurately state the applicable law. This assignment of error is without merit.

Finding no error, this Judgement and Sentence is AFFIRMED.

LANE, P.J., and BRETT and JOHNSON, JJ., concur.

PARKS, J., dissents.

PARKS, Judge, dissenting:

I dissent. The Confrontation Clause requires an accused to be afforded the right to cross examine the State's witnesses regarding bias. Such evidence is "always relevant as discrediting the witness and affecting the weight of his testimony." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Therefore, I agree with the majority that failure of the trial court to allow such evidence constitutes error.

However, unlike the Court, I believe the error warrant's reversal. I do agree that we must apply the standard set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There,

the Supreme Court stated that before considering Confrontation Clause errors "harmless," the reviewing Court must be satisfied beyond a reasonable doubt that the error did not contribute to the appellant's conviction. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. In the case before us, the testimony of Harold Mann was of paramount importance to the State's case. The trial judge recognized this fact when he referred to Mann as the "State's main witness." It is true that some of Mann's testimony was corroborated by other witnesses for the State. However, their testimony was impeached by defense counsel. Therefore, it is possible that the jury relied solely on the testimony of Harold Mann in order to convict appellant. In short, I am not persuaded beyond a reasonable doubt that the trial court's error did not contribute to appellant's conviction.