Sidney Soren SCOTT, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–90–1195.

Court of Criminal Appeals of Oklahoma.

Feb. 14, 1995.

Rehearing Denied April 13, 1995.

Larry Allen, Gene F. Mowery, Checotah (at trial) and Carol W. Walker, Asst. Appellate Indigent Defender, Norman (on appeal), for appellant.

Tom Giulioli, Dist. Atty., O.R. Barris, III, Asst. Dist. Atty., Office of the Dist. Atty., Eufaula (at trial), and Susan Brimer Loving, Atty. Gen. of Oklahoma and A. Diane Blalock, Asst. Atty. Gen., Oklahoma City (on appeal), for appellee.

## OPINION

STRUBHAR, Judge:

Appellant, Sidney Soren Scott, was tried by jury in the District Court of McIntosh

County, Case No. F–90–34, before the Honorable J.M. LeMasters, Jr., Associate District Judge. Appellant was convicted of Murder in the First Degree (21 O.S.Supp. 1989, § 701.7(A)). The jury found two (2) aggravating circumstances and recommended the death penalty.

On February 15, 1990, Appellant and several friends[1] drove from Quinton to the Brooken Cove motel where Dean Monks was staying. The group had at least two cases of beer, tequila, and whiskey. They arrived at the motel after dark and began to drink. During the evening Seymour and Dean Monks walked across the motel parking lot to a beer bar to play pool. They were joined shortly by the others. Jack McDonald, the owner, and Henry Mattocks, decedent, were also in the bar. Decedent, who was over sixty years old, mingled with the group. As he often did, decedent bought beers and pool games for the group. While in the bar Appellant confided to Rinker, his nephew, that he needed about one hundred fifty dollars ($150.00) to pay a citation he received earlier that week. He also indicated decedent was carrying money and that he "was going to do what he had to to get it." When McDonald closed the bar around 11:00 p.m. the group went back to Monks' room. Decedent joined McDonald in his trailer home, located beside the bar, to discuss some business.

Preparing to leave, decedent discovered he had a flat tire. He knocked on the door to Monks' room to see if anyone in the group could help him change the tire. Boggs, Seymour, Edwin Monks and Dean Monks agreed to help him. Decedent returned to McDonald's trailer to get change for a ten dollar bill so he could give the men five dollars for helping him. According to McDonald decedent had eleven dollars on him at this time. McDonald began watching decedent from a window to make sure he was alright.

After his tire was changed, decedent joined the party for a short time. McDonald walked to Monks' room to check on decedent.

He stayed a few minutes and returned to his trailer. Later, several people saw Appellant take possession of a lock blade knife which he had misplaced earlier. Appellant then got into a fight with Bishop and announced he was leaving. He said decedent was giving him a ride home. McDonald saw a man who could have been Appellant get into decedent's truck with him. The two drove north away from the motel. A short time later the others returned to Stigler.

Decedent was found early the next morning a few miles north of the motel. His throat was cut and he had bled to death. He was lying off the road partially in the ditch. There were signs of a struggle and his wallet was missing. The checkbook, where he carried his cash, was found empty at the murder scene. Decedent's truck was found a few miles east of the murder scene. A rag was stuck in the gas tank and the front half of the truck, including the cab, had been burned. Between 6:30 and 7:00 a.m. LaDonna Ford and Bobby Gray saw Appellant on their way to work. He was walking south on the road to Quinton.

After noon on February 16, 1990, Appellant rejoined the group from the previous evening's party. He first told Rinker in private and then announced to the group that he had killed the "old man" for eleven dollars. Describing the murder Appellant said he first struggled with decedent then cut him "from ear to ear" and left him "flopping" in a ditch gasping for breath. Then he took decedent's wallet and drove his truck a few miles east where he burned it by sticking a rag in the gas tank before walking home. Appellant also stated he became sexually aroused when killing decedent. Appellant displayed the knife which had been returned to him the previous night and declared it was the murder weapon. He asked the others to dispose of it and to lie that he had been with them the entire night after the party. He then disappeared for a couple of days.

At Appellant's request Edwin Monks threw the knife into a strip mine pond where

1. Keith Boggs, Ronald Seymour, and Edwin Monks drove from Stigler to Quinton. There

they were joined by Janie Bishop, Ramona Cooper, Neal Rinker, Dean Monks and Appellant.

it was later recovered by police. The first time police spoke with the individuals from the party they all said Appellant had been with them the entire night. Later each one began to tell the police more of what happened. They eventually recounted nearly identical stories of both the events of the 15th and Appellant's statements on the 16th. Boggs, Seymour, Rinker, Edwin Monks, Bishop, Cooper, Ford, and Gray testified for the State at trial.

## ISSUES RELATING TO JURY SELECTION

 In his third proposition of error Appellant argues he was sentenced by a jury predisposed to impose the death sentence. He contends the trial court erred in its individual voir dire of venire members, excusing of four prospective jurors and refusal to allow defense counsel an opportunity to rehabilitate them. After general voir dire and the acceptance of the jurors for cause, but before either side exercised peremptory challenges, the trial court conducted individual voir dire of the jurors on whether they could impose the death penalty. He asked each prospective juror substantially the same question:

Mr. Scott the defendant in this case, is charged as I have said with Murder in the First Degree. If you find him guilty of First Degree Murder, then you will have the duty to assess punishment in this case. The punishment for First Degree Murder is either death, or life imprisonment without parole, or life imprisonment; it will be up to the jury to assess and impose the punishment. In a case where the law and evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the death penalty? [2]

Jurors Welch, McGechie, Combs, and Collins did not affirmatively respond to this question.[3] Thereupon the trial court asked them each a follow up question to determine whether they could lay aside their feelings and apply the law as required by their duty as jurors.

Court: Let me ask you this, Ms. Welch, if you found beyond a reasonable doubt that the defendant is guilty of Murder in the First Degree and if under the evidence, facts and circumstances of the case, the law would permit you to consider a sentence of death; are your reservations about the death penalty so strong that regardless of the law, the facts and the circumstances of the case, you would not impose the death penalty?

Juror Welch: I don't know. I just really don't know.

Court: Well, only you can answer that, Ms. Welch; We can't answer that for you.

Juror Welch: I don't believe I could.

Court: Let me ask you the second question, if you found beyond a reasonable doubt that the defendant was guilty of Murder in the First Degree and if under the evidence, the facts and circumstances of the case, the law would permit you to consider a sentence of death; are your reservations about the death penalty so strong, that regardless of the law, facts and circumstances of the case, you would not impose the death penalty?

Juror McGechie: Sir, I couldn't make that decision about somebody else's life. I just couldn't.

Court: Alright. Let me ask you, Mr. Combs; if you found beyond a reasonable doubt that the defendant was guilty of Murder in the First Degree and if under

2. The trial court asked the quoted question of Juror Welch. Substantially similar questions were asked of Jurors McGechie, Combs and Collins.

3. Juror Welch: I think so.
 Court: Do you have any reservations about that?

Juror Welch: I don't think so. I am not sure.
Juror McGechie: No, sir, I couldn't.
Juror Combs: ... I don't believe in the punishment on the death penalty.
Juror Collins: No.

the evidence, facts and circumstances of the case, the law would permit you to consider a sentence of death; are your reservations about the death penalty so strong, that regardless of the law, facts and circumstances of the case, you would not impose the death penalty?

Juror Combs: No, I don't guess I—if I serve on it I will turn in my best knowledge of what it should be. If that answers the question.

Court: Alright. Let me ask you; if you found beyond a reasonable doubt that the defendant was guilty of Murder in the First Degree and if under the evidence, facts and circumstances of the case, the law would permit you to consider a sentence of death; are your reservations about the death penalty so strong, that regardless of the law, the facts and circumstances of the case, you would not impose the death penalty?

Juror Collins: I don't really know; I just don't know if I could or not.

This Court recently addressed the manner in which trial courts conduct death qualifying voir dire in *Mayes v. State*, 887 P.2d 1288 (Okl.Cr.1994). In *Mayes* this Court held inquiries whether imposition of the death penalty would do violence to a juror's conscience are at best confusing and error. *Id.* at 1297. However, the error can be cured by follow up questions which properly assess the potential juror's ability to set aside personal feelings and follow the law. *Id.* This Court held that the follow up question asked by the trial court in *Mayes*, in language virtually identical to that in the present case, cured the error.[4] Accordingly any error was cured. *See Salazar v. State*, 852 P.2d 729, 732 (Okl. Cr.1993), *reh'g denied*, 859 P.2d 517 (Okl.Cr. 1993); *See also Stiles v. State*, 829 P.2d 984, 988 (Okl.Cr.1992) (holding "violence to your conscience" an acceptable phrasing).

▮ Appellant next argues the trial court abused its discretion in excusing for cause the four prospective jurors because they gave equivocal answers to the follow up questions. Removal for cause of even one venire member who has conscientious scruples against the death penalty but is nevertheless able to set aside those scruples and consider the penalty of death and is therefore eligible to serve on the jury is error of constitutional magnitude not subject to harmless error analysis. *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 2057, 95 L.Ed.2d 622, 638 (1987). When reviewing cases where the answers of potential jurors are unclear or equivocal this Court traditionally defers to the impressions of the trial court who can better assess whether a potential juror would be unable to fulfill his or her oath. *Allen v. State*, 871 P.2d 79, 91 (Okl.Cr. 1994); *Simpson v. State*, 827 P.2d 171, 175 (Okl.Cr.1992); *Duvall v. State*, 825 P.2d 621, 631 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Battenfield v. State*, 816 P.2d 555, 559 (Okl. Cr.1991), *reh'g denied*, 826 P.2d 612 (Okl.Cr. 1992), *cert. denied*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). Equivocal answers, such as those given by the prospective jurors in the present case, are sufficient to dismiss a juror for cause. *See Carter v. State*, 879 P.2d 1234, 1243–1244 (Okl.Cr. 1994); *Banks v. State*, 701 P.2d 418, 422–423 (Okl.Cr.1985), *cert. denied*, 502 U.S. 1036, 112 S.Ct. 883, 116 L.Ed.2d 787; *Dutton v. State*, 674 P.2d 1134, 1138 (Okl.Cr.1984). After considering the entire record surrounding the exclusion of the four prospective jurors, and giving appropriate deference to the trial court's decision, we hold the exclusion of the four prospective jurors was not error. *Allen*, 871 P.2d at 91; *Battenfield*, 816 P.2d at 559.

▮ Finally, Appellant claims the trial court erred when it refused to allow defense

---

4. The trial court in *Mayes* asked:
 Are you—or let me simply ask it this way. If you found beyond a reasonable doubt that the Defendant was guilty of murder in the first degree, and if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death, are your reservations about the death penalty such that, regardless of the law, the facts and the circumstances of the case, you would not consider inflicting the death penalty? *Id.* at 1297.

counsel to rehabilitate the prospective jurors. The manner and extent of voir dire rests within the discretion of the trial court. *Banks,* 701 P.2d at 423. When the proper questions have been asked by the trial court to determine whether prospective jurors can sit in the case, it is not error to deny defense counsel an opportunity to rehabilitate the excused jurors. *Moore v. State,* 788 P.2d 387, 397 (Okl.Cr.1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990); *Stouffer v. State,* 738 P.2d 1349, 1361 (Okl.Cr. 1987), *aff'd* 742 P.2d 562 (Okl.Cr.1987), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), *cert. denied,* —— U.S. ——, 112 S.Ct. 1573, 118 L.Ed.2d 217 (1992). Appellant fails to show the trial court abused its discretion.

## ISSUES RELATING TO GUILT– INNOCENCE

■ In his first proposition of error, Appellant contends insufficient evidence exists to support his conviction and death sentence. Specifically, Appellant argues: his conviction and sentence are improperly based on his out of court confessions[5]; the confessions as related by State witnesses are not corroborated by other evidence; and the evidence does not pass the heightened standard of proof required in death cases. This Court reviews the sufficiency of the evidence to determine whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202, 203–204 (Okl.Cr.1985).

■ It is well settled that a conviction cannot be obtained based solely upon the uncorroborated confession of the defendant. *Wong Sun v. United States,* 371 U.S. 471,

488–489, 83 S.Ct. 407, 418, 9 L.Ed.2d 441, 456 (1963); *Opper v. United States,* 348 U.S. 84, 92, 75 S.Ct. 158, 164, 99 L.Ed. 101, 108 (1954); *Williamson v. State,* 812 P.2d 384, 396 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992), *reh'g denied,* —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1992); *Stout v. State,* 693 P.2d 617, 622–623 (Okl.Cr.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Appellant contends his confessions made to State witnesses on February 16, 1990, are uncorroborated by direct forensic evidence placing him at the murder scene, and hence are inadmissible. This Court has recently addressed the sufficiency of the evidence based in part upon a defendant's out of court statements. In *Fontenot v. State,* 881 P.2d 69, 77–78 (Okl.Cr.1994) we stated,

> [We] reaffirm this Court's prior adoption of the standard which requires only that a confession be supported by "substantial independent evidence which would tend to establish ... [its] trustworthiness ..."[6]

In the present case substantial independent evidence was presented by the State to establish the trustworthiness of Appellant's confessions. When last seen by McDonald, decedent left the motel heading north accompanied by a man who matched Appellant's general description. Decedent was found north of the motel off the road and partially in a ditch, his throat viciously slashed. The mortal wound was made by two separate cuts. The medical examiner testified decedent probably did not die immediately and would have continued to breath and struggle until losing consciousness. He further testified other cuts and bruises on decedent could have been the result of a struggle prior to death. Decedent carried a small amount of cash in his checkbook and a wallet when he was last seen by McDonald but no money or

---

5. Appellant confessed to and described the murder at least three times: in private with Rinker; before the entire group; and while walking with Bishop, Cooper, Seymour and Edwin Monks.

6. Both Appellant and the State develop their arguments on this proposition based upon the corpus delicti rule. *See Williamson,* 812 P.2d at

396; *Stout,* 693 P.2d at 622–623; *Goforth v. State,* 644 P.2d 114, 118 (Okl.Cr.1982). In *Fontenot,* 881 P.2d at 77, this Court rejected the rule requiring proof of the corpus delicti as a predicate for corroborating a defendant's out of court statements.

wallet was found at the murder scene. Decedent's truck was found partially burned a few miles east of the murder scene. A rag had been placed in the gas tank and the cab was completely burned. Lastly, Appellant was seen early the next morning walking home from the direction of the murder. This evidence corroborates the confessions Appellant made the next morning. Therefore, his confessions, as related by State witnesses, were properly admitted. *Fontenot*, 881 P.2d at 68, 80; *Opper*, 348 U.S. at 92, 75 S.Ct. at 164, 99 L.Ed.2d at 108.

 Appellant next contends his confessions were not properly corroborated because the credibility of testifying State witnesses was at issue. In essence he contends the State's witnesses were lying and hence they could not corroborate his confessions. Appellant confuses corroboration with credibility. As noted above, Appellant's confessions were properly corroborated. Once substantial independent evidence was presented by the State, the witnesses could properly testify what Appellant told them the morning after the murder. Whether or not to believe these witnesses was up to the jury who could properly judge their credibility based upon their testimony and demeanor on the stand. *Worcester v. State*, 669 P.2d 283, 285 (Okl.Cr. 1983); *Humphrey v. State*, 452 P.2d 590, 592 (Okl.Cr.1969). It is obvious from the verdict and sentence that the jury chose to believe the State's witnesses despite defense counsel's attempts on cross-examination to expose biases and lack of credibility. Appellant provides no authority or persuasive reason to invade the province of the jury on this issue and we decline to do so.

 Upon review of the record there is sufficient evidence that any rational trier of fact could find Appellant guilty of Murder in the First Degree beyond a reasonable doubt. The State's evidence proved Appellant had a motive to rob decedent. Further, he was the last person seen with decedent and was seen walking from the direction of the murder the next morning. Most importantly, he repeatedly confessed to the killing. While minor discrepancies exist between the testimony of certain State witnesses, they all related substantially the same story regarding the confession of Appellant. The information Appellant provided in his confessions, before any of the witnesses knew of the crime or its circumstances, was virtually identical to the evidence developed from the crime scene.[7] Therefore, this proposition of error is denied.

## ISSUES RELATING TO EXAMINATION OF WITNESSES

In his second proposition of error Appellant contends the trial court erred in limiting defense counsel's questioning of Rinker in both the first and second stages of trial. In the first stage defense counsel sought to question Rinker about an arrest[8] in an effort to expose his bias or motivation for testifying. In the second stage defense counsel sought to impeach Rinker's truthfulness with his juvenile criminal record. Appellant argues Rinker's testimony was indispensable to his conviction and sentence. He postulates Rinker's credibility would have been destroyed on cross examination but for the trial court's rulings.[9]

 It is undisputed defendants are to be allowed to cross examine witnesses to expose

7. Appellant also argues the evidence presented did not meet the heightened standard of proof required in death cases, citing *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944, 961 (1976) and *Caldwell v. Mississippi*, 472 U.S. 320, 340–341, 105 S.Ct. 2633, 2645–2646, 86 L.Ed.2d 231, 246–247 (1985). Appellant misreads these cases. *Woodson* dictates imposition of the penalty of death requires heightened reliability free from arbitrariness. *Caldwell* addresses prosecutorial comments calculated to reduce the jury's sense of responsibility for imposing the death penalty. Neither case

requires a standard higher than beyond a reasonable doubt in the guilt-innocence phase of a death penalty trial.

8. Rinker was arrested after the murder. The record does not reveal the charge against Rinker, only that disposition of the charge was pending at the time of trial.

9. Throughout trial defense counsel made repeated statements that no proof, other than testimony, linked Appellant to the murder. Such was not true. As noted above crime scene evi-

bias, prejudice or motivation. *Delaware v. Van Arsdall,* 475 U.S. 673, 678–679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974); *Beck v. State,* 824 P.2d 385, 389 (Okl.Cr.1991). In the present case Appellant contends the trial court's preclusion of his desired line of questioning was error in two ways. First, he contends foreclosure of a legitimate area of inquiry on cross examination violated his right of confrontation. *See United States v. Lonedog,* 929 F.2d 568, 570 (10th Cir.1991), *cert. denied,* 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991); *United States v. Jorgenson,* 451 F.2d 516, 519 (10th Cir.1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972). Second, he contends limiting the extent of cross examination in this manner was an abuse of the trial court's discretion.

■ In reaching its decision the trial court noted charges were pending and Rinker had not been convicted as a result of the arrest. While we have consistently held it is improper to impeach a witness with former arrests, *McDonald v. State,* 764 P.2d 202, 206 (Okl.Cr.1988), Appellant correctly points out inquiry into prior arrests is permissible to expose bias. *Carolina v. State,* 839 P.2d 663, 665–666 (Okl.Cr.1992); *Beck,* 824 P.2d at 388–389. *See also United States v. Abel,* 469 U.S. 45, 53, 105 S.Ct. 465, 469, 83 L.Ed.2d 450, 458 (1984). This does not mean Appellant is entitled to cross examine witnesses about prior arrests. As we stated in *Beck,*

> The trial court in ruling on evidentiary issues regarding bias evidence for purposes of impeachment, and this Court in reviewing those rulings, shall determine: first, is the fact situation such that the showing of bias to impeach a witness is

relevant under 12 O.S.1981, § 2401; second, is the evidence admissible under 12 O.S.1981, § 2402; and third, even though admissible, should it be excluded under 12 O.S.1981, § 2403.

824 P.2d at 389. *See also, Abel,* 469 U.S. at 53, 105 S.Ct. at 468–469, 83 L.Ed.2d at 458; *Carolina,* 839 P.2d at 666.

■ Appellant fails to show a Sixth Amendment violation in the first stage of trial. Evidence of Rinker's arrest was not relevant to the fact situation of this case. As noted above sufficient evidence existed to prove Appellant murdered decedent.

■ However, it was error to prevent inquiry into Rinker's arrest for purposes of the second stage of trial. Both aggravating circumstances alleged and found in the case [10] relied in part on Rinker's testimony. He testified regarding Appellant's robbery motive for the murder and Appellant's actions and statements in conjunction with his being a continuing threat to society. Clearly, any bias or motivation to testify was relevant on these issues.

■ When a confrontation clause violation occurs this Court must consider certain factors to determine whether the error is harmless beyond a reasonable doubt. *Beck,* 824 P.2d at 390. *See also Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686; *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967), *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). In the present case the factors are: the importance of Rinker's testimony; whether his testimony was cumulative; the presence or absence of evidence corroborating or contradicting his testimony on materi-

dence corroborated Appellant's confessions. Appellant further made numerous allusions at trial that the other eight people present in Monks' room killed decedent, conspired to blame him for the murder, and lied at trial. This is essentially a credibility issue and Appellant fails to present authority or persuasive reason to invade the province of the jury on this matter.

10. The State alleged two aggravating circumstances: the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution, 21 O.S.1981, § 701.12(5); and the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society, 21 O.S. 1981, § 701.12(7).

al points; the extent of cross examination otherwise permitted; and the overall strength of the State's case.

■ Contrary to Appellant's claim, Rinker was not the State's primary or indispensable witness in the second stage. The State presented other evidence to support a finding of the aggravating circumstance to avoid prosecution. In the first stage of trial Edwin Monks testified Appellant told the group he got eleven dollars from decedent. Cooper testified she asked Appellant whether it was worth eleven dollars to kill decedent. Appellant told the group he struggled with decedent. In the second stage the prosecutor cross examined Appellant's mother about a citation Appellant received two days prior to the murder. She confirmed Appellant received a citation for carrying a concealed weapon. This evidence indicates Appellant had a motive to rob and did rob decedent.[11] The testimony of these witness was corroborating and cumulative to Rinker's testimony. Finally, defense counsel had wide latitude during both stages of trial to cross examine all witnesses about their truthfulness and motives for testifying. Therefore this error was harmless.

On the issue of the second aggravating circumstance, continuing threat to society, Appellant again argues Rinker's testimony was indispensable and vital to the jury's finding. Applying the *Beck* test, we find Rinker's arrest and possible bias or motivation was not relevant to proving this aggravating circumstance. Moreover, the State proved, through various witnesses and exhibits, that Appellant had killed decedent in a vicious manner, had participated in prior unrelated criminal acts, and had threatened witnesses while incarcerated prior to trial. This evidence is sufficient to prove Appellant is a continuing threat to society. *See infra.*

11. Appellant's motive and intent are central to proving Appellant murdered in an attempt to avoid arrest or prosecution for robbing decedent. *See infra.*

12. 12 O.S.1981, § 2609(D) reads:
Evidence of juvenile adjudications is not admissible under this Code. The court in a crimi-

■ The trial court did not allow defense counsel to impeach Rinker's truthfulness with his juvenile record during the second stage. Defense counsel informed the trial court such evidence was necessary to show Rinker had a propensity to lie and fabricate. The trial court prevented such questioning, emphasizing that juvenile records are never admissible. This ruling was error. The plain language of 12 O.S.1981, § 2609(D) states that generally juvenile records are not admissible.[12] However, as Appellant correctly states, trial courts in criminal cases may allow such evidence upon a proper showing by trial counsel. When presented with defense counsel's request the trial court should have considered the option to admit Rinker's juvenile records and permitted defense counsel to make a showing the records would be admissible. Failure to do so resulted in a violation of Appellant's right to confront witnesses against him. *Van Arsdall,* 475 U.S. at 678–679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683; *Davis,* 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354; *Beck,* 824 P.2d at 389.

■ After an independent examination of the entire record we conclude preclusion of inquiry into these records was harmless beyond a reasonable doubt. We note the trial court did not prevent defense counsel from asking whether Rinker had made a deal with the prosecution or expected to receive leniency for his testimony. Nor did defense counsel make an offer of proof concerning questions to be asked and anticipated responses to assist the trial court's decision. Through extensive cross examination in both stages of trial defense counsel placed Rinker's lack of credibility at issue very effectively. Finally, Rinker's testimony was corroborated by other witnesses who related Appellant's numerous confessions and actions following the murder.

nal case may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

Appellant likewise fails to show the trial court abused its discretion by preventing inquiry into either Rinker's pending arrest or juvenile records. The trial court can place limits on cross examination. *Van Arsdall*, 475 U.S. at 678–679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683. The extent and scope of cross examination is left to the discretion of the trial court. This Court will not disturb the trial court's decision absent clear abuse resulting in manifest prejudice to the defendant. *Castro v. State*, 844 P.2d 159, 170 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993); *Dunham v. State*, 762 P.2d 969, 973 (Okl.Cr. 1988); *Hall v. State*, 698 P.2d 33, 36 (Okl.Cr. 1985). Appellant fails to show a clear abuse of discretion or that manifest prejudice resulted from the trial court's decision. Contrary to Appellant's contention, the State's case was not solely dependent on Rinker's testimony. As noted above, sufficient evidence was presented, through testimony and crime scene evidence, to convict Appellant of first degree murder. Sufficient evidence also existed to prove both aggravating circumstances. *See infra.* Finally, the trial court's erroneous ruling of law was harmless beyond a reasonable doubt. Appellant's theory of defense that the other people present in Monks' room committed the murder and framed him was not believed by the jury. The jury's rejection of his theory of defense and subsequent conviction, standing alone, cannot serve as the basis to prove he suffered manifest prejudice. Therefore, this proposition of error is denied.

## ISSUES RELATING TO PUNISHMENT

In his fourth proposition of error Appellant requests this Court to reconsider the constitutionality of the aggravating circumstance "continuing threat to society." He contends this aggravating circumstance is vague and not sufficiently tailored. The constitutionality of this aggravating circumstance has been upheld by the United States Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 896–899, 103 S.Ct. 3383, 3396–3397, 77 L.Ed.2d 1090, 1106–1107 (1983), and by

this Court. *Malone v. State*, 876 P.2d 707, 715–716 (Okl.Cr.1994) and cases cited therein.

After reviewing these cases and the application of this aggravating circumstance, the phrase "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" is clear and does not require further definition. The phrase directs the jury to examine the accused's conduct in the offense of which he was convicted as well as other relevant conduct relating to the safety of society as a whole. *Id.* at 716.

Appellant next contends the State failed to prove the aggravating circumstance that "the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution." 21 O.S.1981, § 701.12(5). He claims the State's evidence in both stages of trial failed to prove this aggravating circumstance.

To support a finding of this aggravating circumstance there must be a predicate crime, separate from the murder, for which the defendant seeks to avoid arrest or prosecution. *Barnett v. State*, 853 P.2d 226, 233 (Okl.Cr.1993). Central to proof of the predicate crime is the defendant's intent. *Munson v. State*, 758 P.2d 324, 335 (Okl.Cr. 1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Stouffer v. State*, 738 P.2d at 1361–1362; *Banks v. State*, 701 P.2d at 426. We have consistently held a defendant's intent can be inferred from circumstantial evidence. *Snow v. State*, 876 P.2d 291, 299 (Okl.Cr.1994) and cases cited therein. This Court will review circumstantial evidence to determine whether any reasonable hypothesis exists other than the defendant's intent to commit the predicate crime. *Id.; Riley v. State*, 760 P.2d 198, 199 (Okl.Cr.1988). In the present case the underlying crime for which Appellant is alleged to have murdered in order to avoid prosecution is robbery.

The first stage evidence showed Appellant was in need of approximately one hundred

fifty dollars. He mentioned to Rinker that decedent had money and that he would "do what he had to" to get the money. He left the party in the company of decedent while the others returned to Stigler to sleep. No money was found on decedent although he had eleven dollars the last time McDonald saw him. The next morning Appellant said he killed decedent for eleven dollars. His actions were also consistent with a desire to avoid arrest. Appellant spent a considerable amount of time with decedent and could likely be identified by him. He drove decedent's truck a few miles away and set it on fire. He requested the others fabricate an alibi for him and directed the disposal of the murder weapon. Edwin Monks testified Appellant gave his pants to his sister because they were bloody. Finally, the evidence was sufficient to prove Appellant murdered decedent with malice aforethought. From this evidence the jury could conclude Appellant had motive to rob decedent, left with him to commit the robbery, struggled with and then killed decedent, moved and burned the truck in an effort to destroy evidence, directed the destruction of pants linking him to the murder and directed the disposal of the murder weapon. From this the jury could rule out all other reasonable hypotheses but that Appellant committed the murder to avoid arrest or prosecution. *Compare Carter,* 879 P.2d at 1247; *Fox v. State,* 779 P.2d 562, 575–576 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990), and *Munson,* 758 P.2d at 335 (finding sufficient evidence).

■ Appellant next contends the second stage evidence was likewise insufficient to prove he murdered decedent to avoid prosecution. He argues the judgment and sentence for escape admitted during the second stage was critical to proving his propensity to avoid responsibility for his past criminal actions and the inference he murdered decedent to avoid arrest. Appellant claims the State failed to prove he was the same individual listed on the judgment and sentence ad-

mitted to prove he had previously been convicted of escape from a penal institution. He claims all trial documents list him as Sidney S. Scott while the judgment and sentence reads Sidney Soren Scott.[13] However, the Bill of Particulars does list Appellant as Sidney Soren Scott. While the State should have provided more proof of identification, the similarity of the names, use of both names on the Bill of Particulars, and references by witnesses that Appellant had just been released for escape is sufficient to prove the person listed on the judgment and sentence as Sidney Soren Scott was Appellant, identified on trial court documents as Sidney S. Scott. *See Battenfield v. State,* 826 P.2d 612, 614 (Okl.Cr.1991); *Dodson v. State,* 674 P.2d 57, 59 (Okl.Cr.1984); *but see Cooper v. State,* 810 P.2d 1303, 1305–1306 (Okl.Cr. 1991). In addition to the judgment and sentence the State presented Ronda Simon as a rebuttal witness. She testified the day after the murder Appellant directed that his sister and mother destroy the pants he wore on February 15, 1990. From this second stage evidence the jury could conclude Appellant had previously attempted to avoid responsibility for criminal acts and destroyed evidence and directed the destruction of other evidence which could link him to the murder. Together with the first stage evidence, sufficient evidence was presented to prove Appellant committed the murder to avoid arrest or prosecution.

In his sixth proposition of error Appellant speculates insufficient evidence in aggravation exists to support his death sentence absent the existence of the aggravating circumstance to avoid arrest or prosecution. As discussed above, sufficient evidence does exist to support the aggravating circumstance to avoid arrest or prosecution.

■ To support the aggravating circumstance of continuing threat to society the State must prove the defendant's behavior demonstrated a threat to society and a probability this threat would continue to exist,

---

**13.** Appellant lists the Information, First Stage Guilty form, Second Stage Punishment form, and Second Stage Aggravating Circumstance form as the documents which read Sidney S. Scott.

even after sentencing. *Malone*, 876 P.2d at 717; *Smith v. State*, 819 P.2d 270, 277–278 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992), *reh'g denied*, —— U.S. ——, 113 S.Ct. 11, 120 L.Ed.2d 939 (1992); *Sellers v. State*, 809 P.2d 676, 689 (Okl.Cr.1991), *cert. denied*, 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991). This can be established through introduction of evidence detailing the defendant's participation in unrelated crimes[14] as well as the sheer callousness with which a defendant commits a particular murder.[15]

 We find sufficient evidence existed to support the aggravating circumstance of continuing threat to society. The fatal wound was vicious and did not result in immediate death. Appellant confessed several times he killed decedent for eleven dollars. He also told Rinker he became sexually aroused when killing decedent. The State presented evidence Appellant had been convicted of escape from a penal institution and destroyed evidence in the present case. From this the jury could logically conclude he had committed a prior crime for which he was being incarcerated and his propensity to avoid responsibility for his crimes. Evidence was presented he was previously incarcerated in Arizona and received a citation for carrying a concealed weapon two days prior to the murder. Finally, evidence was presented he claimed to have killed previously and made threats to witnesses while in custody prior to trial.

Both aggravating circumstances are supported by the evidence. Weighing of aggravating circumstances against mitigating circumstances will be addressed in the Mandatory Sentence Review. There is no merit to this proposition.

In his final proposition of error Appellant challenges the constitutionality of several second stage instructions. While acknowledging this Court has held such instructions are constitutional,[16] Appellant asks this Court to revisit the issue. He argues that, while the instructions in his case mirror the Oklahoma Uniform Jury Instructions–Criminal (OUJI–CR) instructions, the law relating to death penalty cases has evolved such that the OUJI–CR instructions do not adequately present the law to jurors. Appellant presents four challenges to the adequacy of the instructions given.

 In his first challenge Appellant claims incorporation of the first stage antisympathy instruction[17] in the second stage instructions[18] precluded the jury from giving Appellant the sympathy that the mitigating circumstances could have warranted. This Court has upheld this practice on numerous occasions. *See Harjo v. State*, 882 P.2d 1067, 1079–1080 (1994); *Mayes*, 887 P.2d at 1321; *Revilla*, 877 P.2d at 1153; *Boyd*, 839 P.2d at 1372; *Stiles*, 829 P.2d at 994–995; *Thomas*, 811 P.2d at 1349–1350; *Fox*, 779 P.2d at 574–575. The law on this issue is clear. The trial court did not err in incorporating the first stage instructions in the second stage of trial.

 Appellant next contends the instructions given the jury on mitigating circum-

---

14. *See Snow*, 876 P.2d at 298; *Allen*, 871 P.2d at 100; *Castro*, 844 P.2d at 172; *Clayton v. State*, 840 P.2d 18, 35 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993); *Boyd v. State*, 839 P.2d 1363, 1368 (Okl. Cr.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); *Battenfield*, 816 P.2d at 567; *Boltz v. State*, 806 P.2d 1117, 1125 (Okl.Cr.1991), *cert. denied*, 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991); *Munson v. State*, 758 P.2d at 335; *Ross v. State*, 717 P.2d 117, 123–124 (Okl.Cr.1986), *aff'd*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

15. *See Revilla v. State*, 877 P.2d 1143, 1155 (Okl. Cr.1994); *Snow*, 876 P.2d at 298; *Allen*, 871

P.2d at 100; *Workman v. State*, 824 P.2d 378, 383–384 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992); *Battenfield*, 816 P.2d at 566; *Sellers*, 809 P.2d at 690; *Boltz*, 806 P.2d at 1125; *Fox v. State*, 779 P.2d at 577.

16. *See* Brief of Appellant at 88 wherein he cites *Thomas v. State*, 811 P.2d 1337 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992).

17. Instruction No. 19 is taken verbatim from OUJI–CR No. 907.

18. Supplemental Instruction No. 10 is taken verbatim from OUJI–CR No. 442.

stances left the matter to the unguided discretion of the jury.[19] He claims this creates doubt whether the jury considered mitigating circumstances in violation of *Morgan v. Illinois*, —— U.S. ——, ——, 112 S.Ct. 2222, 2234, 119 L.Ed.2d 492, 508–509 (1992), and *Eddings v. Oklahoma*, 455 U.S. 104, 117, 102 S.Ct. 869, 878, 71 L.Ed.2d 1, 12 (1982). Appellant argues the instructions should have contained the word "must" instead of "may" in order to ensure the jury considered his list of mitigating circumstances. This precise issue has been addressed and this Court has consistently upheld similarly worded instructions. *See Mayes*, 887 P.2d at 1320–1321; *Revilla*, 877 P.2d at 1154; *Malone*, 876 P.2d at 714; *Allen*, 871 P.2d at 102; *Pickens v. State*, 850 P.2d 328, 339 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Thomas*, 811 P.2d at 1350. There is no merit to this contention.

■ In his third challenge Appellant contends the instructions failed to inform the jury that it did not have to find mitigating circumstances by unanimous decision. Appellant argues that, because the jury must find aggravating circumstances unanimously, the instructions would lead them to believe they must also find the mitigating circumstances by unanimous decision. This precise argument has been rejected by this Court. *See Harjo*, 882 P.2d at 1081; *Mayes*, 887 P.2d at 1320–1321; *Stiles*, 829 P.2d at 997. There is no merit to this contention.

■ Finally, Appellant claims the instructions as given set forth an improper burden for weighing the mitigating circum-

stances against the aggravating circumstances.[20] He claims the preponderance of the evidence standard violates the heightened standard required in death penalty cases. This Court has consistently held that specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Malone*, 876 P.2d at 715; *Romano v. State*, 847 P.2d 368, 392 (Okl.Cr.1993), *cert. granted*, —— U.S. ——, 114 S.Ct. 380, 126 L.Ed.2d 330 (1993); *Woodruff v. State*, 846 P.2d 1124, 1149 (Okl.Cr. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Williamson v. State*, 812 P.2d 384, 410 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992), *reh'g denied*, —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1992). *See also Zant v. Stephens*, 462 U.S. 862, 890, 103 S.Ct. 2733, 2750, 77 L.Ed.2d 235, 258 (1983). The instructions given mirror the OUJI–CR instructions and informed the jury that a finding of aggravating circumstances beyond a reasonable doubt is not by itself sufficient to assess the death penalty. Rather, the aggravating circumstances must clearly outweigh any mitigating circumstances before the death penalty may be imposed. This Court has held similar instructions constitutional. *See Harjo*, 882 P.2d at 1082; *Revilla*, 877 P.2d at 1153; *Allen*, 871 P.2d at 102; *Romano*, 847 P.2d at 392; *Woodruff*, 846 P.2d at 1149; *Williamson*, 812 P.2d at 410 and cases cited therein. There is no merit to this contention.

## MANDATORY SENTENCE REVIEW

■ Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must now determine (1)

---

19. Supplemental Instruction No. 6 is taken verbatim from OUJI–CR No. 438. Supplemental Instruction No. 7 is derived from OUJI–CR No. 439 and reads:

 Evidence has been offered as to the following mitigating circumstances:
 1. The age of defendant at time of crime;
 2. Capacity of defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of intoxication;
 3. Education and work history of defendant;
 4. Defendant has never previously been convicted of a crime of violence;

 5. The defendant's family history;
 6. The defendant's potential for rehabilitation.

 Whether these circumstances existed, and whether these circumstances are mitigating, must be decided by you.

20. Supplemental Instruction No. 8 is taken verbatim from OUJI–CR No. 440. Supplemental Instruction No. 9 is taken verbatim from OUJI–CR No. 441.

whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.Supp.1981, § 701.12. As noted above sufficient evidence existed to support both aggravating circumstances alleged by the State: to avoid arrest or prosecution; and continuing threat to society. In mitigation Appellant presented evidence of his youth, that he was intoxicated at the time of the murder, his good work history, incomplete public education, the death of his father when he was ten years old, loving relationship with his family, his potential for rehabilitation, and that he had never previously been convicted of a violent crime. After carefully weighing the aggravating circumstances and all mitigating evidence, we determine the aggravating circumstances outweigh the mitigating evidence. The sentence of death is factually substantiated and appropriate. Finally, no error exists warranting reversal or modification. Accordingly, Appellant's conviction and sentence are AFFIRMED.

JOHNSON, P.J., and CHAPEL, V.P.J., and LUMPKIN, J., concur.

LANE, J., concurs in result.

LANE, Justice, concurring in result.

I write to address my views as to the majority's treatment of Appellant's Proposition II, the restrictions on cross examination of witness Rinker. I fail to see how the evidence of his arrest between the time of the murder and the trial would be admissible for impeachment in the second stage of trial and not in the first. The majority finds that the evidence is admissible in the second stage to show bias or motivation to testify. I find that it is admissible in the first stage for the same reason.

The majority relied upon statements referring to 12 O.S.1981, §§ 2401–2403 contained in *Beck v. State*, 824 P.2d 385 (Okl.Cr.1991) which I do not believe apply to the current case. In *Beck*, the defendant had asked questions as to whether or not a witness had received favorable treatment on charges in exchange for his testimony. Favorable treatment was denied. The defendant then attempted to introduce evidence that in spite of the testimony certain charges were either not filed or were subsequently dropped against the witness. It is the introduction of this extrinsic evidence to which the quoted language relates. We do not have that situation here. Here, the trial court prohibited Appellant from asking about favorable treatment on arrests. The identified language from *Beck* would only apply if the questions had been asked, there was a denial of favorable treatment being offered and Appellant then tried to introduce evidence of favorable treatment.

However, *Beck* does stand for the proposition that sometimes evidence that would not be admissible under the evidence code *may* be admissible for the purpose of showing the witness is biased or had motivation to testify in a certain manner. This concept was reinforced in *Carolina v. State*, 839 P.2d 663 (Okl.Cr.1992) where we held that the State could cross examine on prior arrests and pending charges to show bias of defense witnesses.

Once we establish that the denied questioning may be permitted we must then look to see if the trial court abused its discretion in prohibiting the appellant from inquiring into the arrests. I would find that it was an abuse of discretion. I would then make a determination as to whether the error was verdict determinative or fit in the area of harmless error. When examined in the light of the entire case I find that the error is harmless beyond a reasonable doubt.

I concur in results.