Dewey George MOORE, Petitioner,

v.

STATE of Oklahoma, Respondent.

No. PC–94–434.

Court of Criminal Appeals of Oklahoma.

Feb. 9, 1995.

Benjamin McCullar, Asst. Appellate Indigent Defender, Capital Post–Conviction, Norman, for petitioner.

Susan B. Loving, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for respondent.

### OPINION AFFIRMING DENIAL OF POST–CONVICTION RELIEF

CHAPEL, Vice Presiding Judge:

Dewey George Moore was tried by jury in the District Court of Oklahoma County, Case No. CRF–84–4758. He was convicted of First Degree Murder and Kidnapping After Former Conviction of a Felony and, on September 27, 1985, the Honorable James L. Gullett followed the jury's recommendation and imposed sentences of death and 999 years incarceration, respectively. This Court

affirmed Moore's convictions and sentences.[1] On April 10, 1994, Oklahoma County District Court Judge Richard W. Freeman denied Moore's Application for Post–Conviction Relief. Moore now appeals the denial of post-conviction relief.

On September 27, 1984, twelve-year-old J.G. was abducted from the Carl Albert Junior High School parking lot after a football game. J.G. wore a pep club uniform. Several witnesses saw a man struggling with a girl near a yellow car. J.G.'s partially clad body was found on September 28. That morning, Moore was arrested while driving a stolen car. Moore had a yellow car similar to the one seen by witnesses. Various hair, fiber, and circumstantial evidence connected him to the crime.

Moore raises fifteen propositions of error. After thorough review of each claim of error, we find that Propositions I, II, III, XIII, and XV are the only propositions not barred by res judicata or waived.

■■■ The Post–Conviction Procedure Act outlines procedures by which a defendant may challenge his conviction and sentence after direct appeal.[2] This procedure is not an opportunity to raise new issues, resubmit claims which were determined on direct appeal, or submit issues which could have been raised on direct appeal. Propositions IV, V[3], VI, VII, IX, and XII[4] were raised on direct appeal and are therefore barred by res judicata.[5] Propositions VIII,[6] X, and XIV[7] could have been raised on direct appeal, but were

---

1. *Moore v. State*, 788 P.2d 387 (Okl.Cr.1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990).

2. 22 O.S.1981, §§ 1080 *et seq.*

3. Moore raises the issue of ineffective assistance of appellate counsel in Proposition V–F. He claims appellate counsel failed to argue that trial counsel provided ineffective assistance. Moore argues that appellate counsel had an inherent conflict because he was represented by the Oklahoma County Public Defender both at trial and on appeal. We have previously found no ineffective assistance where a defendant was represented by the same indigent defense entity on appeal and in post-conviction proceedings. *Williamson v. State*, 852 P.2d 167, 169 (Okl.Cr.1993). Moore does not demonstrate that an actual conflict existed, nor does he argue that a conflict might have existed. He merely suggests that one cannot expect an attorney on appeal to argue its own office's incompetence at trial, citing Illinois cases. Whatever Illinois law may be, this Court has not held that such representation creates an inherent conflict amounting to ineffective assistance, and we refuse to do so now. While appellate counsel did not raise every conceivable appellate issue, counsel vigorously raised relevant issues for this Court to consider. *Mann v. State*, 856 P.2d 992, 994 (Okl.Cr.1993). The record does not support Moore's contention that the issues involved constitute clear reversible error. Moore has not shown any conflict among counsel, and appellate counsel was not ineffective for failing to claim ineffective assistance of trial counsel.

4. Moore acknowledges that prosecutorial misconduct was raised on direct appeal, but claims ineffective assistance of counsel because these particular comments were not specifically brought to the Court's attention. Thorough review of the comments reveals that the State was primarily either making permissible comments based on the evidence at trial or responding to Moore's closing arguments. The State occasionally skirted the boundaries of permissible argument but those comments, taken with the closing arguments as a whole, do not warrant reversal or modification. Insofar as this claim is not barred by res judicata, the proposition is denied.

5. *Fowler v. State*, 873 P.2d 1053, 1056 (Okl.Cr. 1994); *Walker v. State*, 826 P.2d 1002, 1005 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992); *Banks v. State*, 810 P.2d 1286, 1289 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1036, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992).

6. The District Court Findings on Post–Conviction Review indicate that this proposition was addressed on direct appeal. This Court is unable to find any reference to lesser included instructions in that opinion. However, this issue could have been raised at that time.

7. The issue of cumulative errors at trial could have been raised on direct appeal. We find no error in the propositions presented to the district court on post-conviction review which could require either remand for an evidentiary hearing or a new trial.

not, and are therefore waived absent proof of adequate grounds to excuse the delay.[8]

■ In Proposition I Moore requests this Court to hold this matter in abeyance pending resolution on appeal of *Mann v. Reynolds*.[9] He argues that continued unconstitutional visiting conditions impede his access to counsel and impair counsel's ability to investigate and prepare a proper petition for post-conviction relief. Moore does not specifically describe the alleged improper visiting conditions, nor does he describe the manner in which access is limited and the ways in which counsel is unable to investigate and prepare the case. These bare assertions of error do not persuade us that this collateral matter should be decided under the post-conviction rubric.[10]

■ In Proposition II Moore requests an evidentiary hearing based on exculpatory evidence he claims was discovered subsequent to his trial. Moore must show 1) the evidence is material; 2) it could not with due diligence have been discovered before trial; 3) it is not cumulative; and 4) it creates a reasonable probability that the outcome of the trial will be changed.[11] A new trial will not be granted where the evidence merely tends to discredit or impeach a witness without some probability that the trial result would be changed.[12]

At trial, 15–year–old Paulo Gomes pointed out Moore as a man who "looked like" the man he saw struggling with a girl in a Pep Club uniform the night J.G. was abducted. In a police interview tape played for the jury, Gomes picked Moore and another man from a photo lineup because they resembled the man he saw, but admitted that, because he was running and the parking lot was dark, he could not say for sure what the man looked like. Gomes testified that he picked Moore because his shirt and facial hair resembled the man, and picked the other man for his build. Gomes described on tape and testified that the man he saw wore a ball cap, a long sleeved shirt, and a thick padded winter vest, and he could not clearly see the man's build or facial characteristics. Gomes testified only that the girl wore a pep club uniform. He said on tape that she also had shoulder-length brown hair, he had seen her around school once and did not know her.[13]

Moore submits as newly discovered evidence an affidavit in which Paulo Gomes says that 1) in his tape recorded statement he could not positively identify Moore; 2) in a photo lineup he picked out a different man, and only identified Moore's shirt; 3) that his positive identification of Moore at trial was wrong, and he could not and cannot say with certainty that the man he saw in the parking lot was Moore; 4) he could not distinguish either person's facial and physical characteristics because of the man's hat and winter vest; 5) he did not and could not identify J.G. as being the girl he saw, except that she

**8.** *Fowler*, 873 P.2d at 1056–57; *Johnson v. State*, 823 P.2d 370 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1984, 118 L.Ed.2d 582 (1992); *Banks*, 810 P.2d at 1289.

**9.** 828 F.Supp. 894 (W.Dist.OK 1993). Moore was a member of the federal class action in which limited relief was granted to plaintiffs complaining about conditions in Oklahoma prisons.

**10.** *Cf. Mann v. State*, 856 P.2d at 993 (the denial of confidential contact communication rendering the appeal incomplete is collateral issue); *Williamson v. State*, 852 P.2d at 169 (pending Western District decision in *Mann v. Reynolds* is collateral issue not suited to post-conviction relief issue of whether trial court judgment is supported by record).

**11.** *Brecheen v. State*, 835 P.2d 117, 121 (Okl.Cr. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1063,

122 L.Ed.2d 368 (1993) (evidence cumulative and could have been discovered before trial with due diligence); *Hunter v. State*, 829 P.2d 64, 67 (Okl.Cr.1992) (evidence was material, newly discovered, and affected probability of trial outcome); *Salyers v. State*, 755 P.2d 97, 101 (Okl.Cr. 1988).

**12.** *Smith v. State*, 826 P.2d 615, 617–618 (Okl.Cr. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 405, 121 L.Ed.2d 331 (1992) (post-trial evidentiary hearing cast doubt on truth of witness's testimony but evidence would only discredit or impeach witness).

**13.** This Court's opinion on appeal also refers to this testimony. *Moore*, 788 P.2d at 390.

wore a pep club uniform and had shoulder-length brown hair; 6) that, after seeing a photograph of J.G.'s natural father in February, 1991, he believes that man looks at least as much like the man he saw in the parking lot as does either Moore or the other man Gomes picked from the lineup; and 7) nobody from the Public Defender's Office contacted him before trial.

The only assertion in this affidavit that was not brought before the jury is that J.G.'s natural father could have been the man he saw. All Gomes' statements about his identification of Moore and what he saw that night were presented to the jury at trial. Although the defense team may not have contacted Gomes before trial, all the testimony about the weakness of his identification, including the interview tape, was developed on cross-examination by Moore's counsel.[14] The jury had an opportunity to hear both Gomes' taped "identification" and his testimony. This evidence clearly showed that Gomes could not positively identify any person as the man he saw. The fact that Gomes now has found a third picture which resembles the man does not create a reasonable probability of changing the outcome of the trial.[15] Moore has not presented new evidence sufficient to warrant an evidentiary hearing.

 In Proposition III Moore claims he is entitled to an evidentiary hearing and full disclosure by law enforcement officials due to irregular and unusual behavior from the State. After this Court issued its opinion on appeal, counsel discovered and obtained an affidavit from David Bruce Hawkins, a mortician who prepared J.G.'s body for burial.

Moore presented this affidavit in a Petition for Rehearing filed with this Court on February 6, 1990. Although the Court denied the Petition, Moore is not collaterally estopped from raising the issue on appeal. Issues which may be raised in a Petition for Rehearing differ from issues proper for consideration on post-conviction review, and this Court has not previously considered this issue.

In his Application for Post–Conviction Relief Moore presented the district court, and submits to this Court, a second affidavit prepared by Hawkins. Hawkins states that, shortly after he finished washing, cleaning, disinfecting and embalming J.G.'s body, two Midwest City police detectives came to the funeral home. They appeared nervous, said they had a suspect and wanted to make sure he was convicted, and cut several hair samples from the body. Later that day the detectives returned to pluck hair samples rather than cutting them from the body. One or two days later, they returned for a third time. The body was already dressed and on display, and Hawkins had to move the body, remove it from the casket, and undress it so detectives could collect more hair samples. Hawkins avers that the embalming chemicals alter the nature of hair and tissue. Hawkins says that in June 1985, before Moore's trial, he encountered District Attorney Macy in the courthouse and told him of this behavior, and was subsequently arrested, extradited to Texas, and jailed for the duration of Moore's trial.[16]

Although this certainly suggests that Midwest City police followed a somewhat unusual investigative procedure in this case, the in-

---

**14.** In Proposition V Moore claims trial counsel was ineffective in failing to investigate Gomes's statements before trial. The record shows that counsel ably brought out Gomes's inconsistencies and weak identification at trial. Moore cannot show that counsel's failure to contact Gomes pretrial constituted a deficient performance which prejudiced his client. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Several ineffective assistance of counsel issues were raised on direct appeal, and Moore's further ineffective assistance claims are barred by res judicata or waived because they could have been raised on direct appeal.

**15.** Evidence of a third person who resembled the man might be material, but as the man in question was J.G.'s natural father nothing suggests that this could not have been discovered before trial with due diligence.

**16.** Hawkins' affidavit submitted with the Petition for Rehearing was longer and differed from the affidavit now before the Court.

formation does not entitle Moore to an evidentiary hearing. This evidence could not have been discovered with due diligence before trial, and is not cumulative of any evidence presented at trial. However, mere evidence of unusual conduct on the detectives' part, when evaluated in the context of the entire record, is not material, and does not create a reasonable probability that the trial's outcome would be changed.[17] Moore has failed to present this Court evidence which would compel an evidentiary hearing.

■ In Proposition XIII Moore claims he is being denied access to the courts and other resources due to State interference with his right to effective counsel. Moore is represented in post-conviction proceedings by the Oklahoma Indigent Defense System (OIDS). Moore claims that OIDS is severely understaffed with relatively inexperienced attorneys. Moore noted that his counsel personally represents two of the seven inmates whose execution dates were set for 1994, but does not offer any specific examples of areas in which more time or extra assistance would alter these proceedings. The pleadings before us include a very thoroughly researched and meticulously written brief filed on Moore's behalf. Through post-conviction investigation, counsel offers this Court two separate claims of newly discovered evidence. We cannot say that counsel's performance is ineffective, and Moore has not specifically shown ways in which counsel's performance would differ if counsel had more time or other, unspecified, assistance. The district court did not err in refusing to grant relief on this claim.

■ In Proposition XV Moore argues that the district court erred in denying his request for an evidentiary hearing and discovery. Neither the U.S. nor the Oklahoma Constitution affords Moore a right to an evidentiary hearing.[18] The record before us reveals no material issue of fact or other

reason why Moore's application could not be disposed of on the pleadings and record.[19] We have determined that Moore was not entitled to an evidentiary hearing on the basis of his claims in Propositions II and III, and he has not otherwise suggested that the record was incomplete or that any issues presented required more proof than that in the existing record.

We have carefully examined Moore's entire record before us on appeal, including the application and the District Court's findings of fact and conclusions of law, and find that he is not entitled to relief. The order of the District Court denying post-conviction relief should be, and is hereby **AFFIRMED.**

JOHNSON, P.J., and LANE and STRUBHAR, JJ., concur.

LUMPKIN, J., concurs in results.

---

**17.** *Hunter,* 829 P.2d at 67.

**18.** 22 O.S.1981, § 1084, *Johnson,* 823 P.2d at 373.

