Kelly Lamont ROGERS, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. PC–96–1129.

Court of Criminal Appeals of Oklahoma.

Feb. 25, 1997.

Dora Roberts, Appellate Defense Counsel, Capital Post–Conviction Division, Oklahoma Indigent Defense System, Norman, for Petitioner.

### ORDER DENYING APPLICATION FOR POST–CONVICTION RELIEF, REQUEST FOR EVIDENTIARY HEARING AND MOTION FOR DISCOVERY

CHAPEL, Presiding Judge:

Kelly Lamont Rogers was tried by jury before the Honorable Donald L. Worthington in the District Court of Payne County. In Case No. CRF–90–412 he was convicted of First Degree Malice Aforethought Murder in violation of 21 O.S.1991, § 701.7; he was convicted of First Degree Robbery, 21 O.S. 1991, § 801, in CRF–91–26 and CRF–91–27; First Degree Rape, 21 O.S.1991, §§ 1111, 1114, in CRF–91–28; and Larceny of a Motor Vehicle, 21 O.S.1991, § 1720, in CRF–91–29, all after conviction of two or more felonies. The jury found 1) the murder was especially heinous, atrocious, or cruel; 2) there was a probability that Rogers would commit criminal acts of violence that would constitute a continuing threat to society; and

3) Rogers had previously been convicted of a felony involving violence. Rogers was sentenced to death for the murder conviction, fifty years and seventy-five years for each robbery charge respectively, one hundred fifty years for rape, and fifty years incarceration for larceny. Rogers appealed his judgments and sentences to this Court and we affirmed.[1] This Court denied Rogers's petition for rehearing and the United States Supreme Court denied Rogers's petition for certiorari.[2]

■■■ On September 16, 1996, Rogers filed an Application for Post–Conviction Relief directly with this Court.[3] The only issues that can be raised in post-conviction are those which: "(1) [w]ere not and could not have been raised in a direct appeal, and (2) support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent."[4] This Court reviews each application to determine: "(1) whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist; (2) whether the applicant's grounds were or could have been previously raised; and (3) whether relief may be granted...."[5] The Post–Conviction Procedure Act is not intended to provide a second appeal.[6] We will consider neither issues raised on direct appeal and therefore barred by **res judicata**,[7] nor issues waived because they could have been raised on direct appeal but were not.[8] We will not address Rogers's propositions which are barred by waiver or **res judicata**.[9]

1. *Rogers v. State*, 890 P.2d 959 (Okl.Cr.1995).

2. *Rogers v. Oklahoma*, —— U.S. ——, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995).

3. 22 O.S.Supp.1995, § 1089 provides that an original application for post-conviction relief shall be filed with this Court. The revised capital post-conviction procedures do not require that the State respond to the original Application, and no State response was filed.

4. 22 O.S.Supp.1995, § 1089(C)(1)(2).

5. 22 O.S.Supp.1995, § 1089(D)(4)(a).

6. *Fowler v. State*, 896 P.2d 566, 569 (Okl.Cr. 1995); *Fox v. State*, 880 P.2d 383, 384 (Okl.Cr. 1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995).

7. *Moore v. State*, 889 P.2d 1253, 1255 (Okl.Cr.), *cert. denied*, —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); *Fowler v. State*, 873 P.2d 1053, 1056 (Okl.Cr.), *cert. denied*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994); *Mann v. State*, 856 P.2d 992, 993 (Okl.Cr.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994); *Walker v. State*, 826 P.2d 1002, 1005 (Okl.Cr.), *cert. denied*, 506 U.S. 898, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992).

8. *Moore*, 889 P.2d at 1255–56; *Fowler*, 873 P.2d at 1056–57; *Johnson v. State*, 823 P.2d 370, 372 (Okl.Cr.1991), *cert. denied*, 504 U.S. 926, 112 S.Ct. 1984, 118 L.Ed.2d 582 (1992).

9. In Propositions II, III, IV, and VII Rogers states the issue of denial of State funds for his own expert was raised on direct appeal, but should be reconsidered in light of a recent medical evaluation. If this were the only issue presented in these propositions, they would be barred by **res judicata**. Propositions II and VII are also barred by waiver, and other issues raised in Proposition IV are discussed above.

Propositions of error barred by **res judicata**:
III. Rogers was denied adequate funds for an expert and investigation in violation of the Sixth Amendment right to access to the courts and the Fourteenth Amendment right to due process; [Rogers's brief also alleges state-induced ineffective assistance of trial counsel. This claim is repeated in Proposition IX.]
IX. The State induced ineffective assistance of counsel through its various agencies, by denying Rogers the right to a publicly funded medical expert, an experienced investigator to retrieve the records for the expert to examine, the appointment of counsel not versed in mental health proceedings and the withholding of vital information in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. [Rogers claims this issue was not raised on direct appeal but is properly before this Court because *Castro v. Oklahoma*, 71 F.3d 1502 (10th Cir.1995) is persuasive authority. If that were the case this proposition would be barred by waiver. However, the issue was raised and decided on direct appeal. *Rogers*, 890 P.2d at 967–68.]
Propositions of error barred by waiver:
V. Rogers's statements to Sergeant McGrath should have been suppressed on the basis of being involuntary and the result of overreaching in the technique employed in the custodial interview of Rogers, in violation of his Fifth and Sixth Amendment rights; [Rogers claims this issue was not raised due to Oklahoma case law at the time of direct appeal, but neither cites law which would have prevented him from raising the claim nor argues that a retroactive intervening change in the law has occurred which would now permit it. This Court has considered Rogers's claim of ineffec-

In Proposition I Rogers claims that the recent amendments to the Oklahoma capital post-conviction procedures deny equal access to the courts and deprive Rogers of due process, and that their retroactive application violates the **ex post facto** clause. The new procedures violate neither principles of due process and equal protection nor the **ex post facto** clause.[10] This proposition is denied.

In Proposition VI Rogers claims that the "clear and convincing" standard of evidence applied in the trial court's evaluation of his competency to stand trial violates his right to due process. Rogers bases this claim on *Cooper v. Oklahoma*,[11] in which the United States Supreme Court held that Oklahoma's "clear and convincing" standard of evidence violated fundamental due process rights. We have declined to apply *Cooper* on post-conviction review.[12] This proposition is denied.

The remainder of Rogers's propositions[13] are based on his claim that the trial court erred in denying him state funds for an investigator and experts and in alternatively refusing to appoint counsel from the Oklahoma Indigent Defense System (OIDS) to represent him at trial. This Court denied this proposition on direct appeal.[14] We held Rogers's right to equal protection was not violated when the trial court denied funds and refused to transfer the case to OIDS, and found Rogers had made no showing that he was harmed by the lack of expert assistance. Trial counsel had requested an investigator, a forensics expert, and a medical expert, but did not claim that he needed the latter to determine or testify regarding Rogers's mental state or abilities. On post-conviction Rogers recharacterizes trial counsel's request and claims he was entitled to a medical expert to investigate and explain his men-

tive assistance of counsel in connection with this proposition and finds that counsel was not ineffective.]

VIII. Rogers's Sixth and Eighth Amendment rights were violated by the lack of an investigation into his personal and family medical history to be presented at trial and the information from those sources is indicative of the problems Rogers suffered from and the medically predictable consequences of those problems should have been considered by the jury before they sentenced Rogers to death. [Rogers claims this issue was not raised due to Oklahoma case law at the time of direct appeal but claims the issue is not waived because *Castro v. Oklahoma*, 71 F.3d 1502 (10th Cir.1995) is persuasive authority. Rogers has not shown that *Castro* constitutes a new rule or a binding retroactive intervening change in the law. 22 O.S.Supp.1995, § 1089(D)(9).]

Propositions of error barred by waiver or **res judicata:**

II. Rogers was denied his Fifth and Sixth Amendment rights, to remain silent and to have counsel present at all critical stages, by the court ordering him to have his sanity evaluated by the State's expert witness although the defense of insanity had not been raised; [Rogers states the issue of denial of State funds for his own expert was raised on direct appeal, but should be reconsidered in light of a recent medical evaluation. If that were the case, this proposition would be barred by **res judicata.** The Application appears to allege that issue as error as well as the issue raised in the proposition, which is waived because it could have been raised on direct appeal. The brief also alleges ineffective assistance of trial counsel for failure to understand the difference be-

tween incompetence and insanity. The Application nowhere makes this allegation of ineffective assistance of counsel; as it relies on facts contained in the record on direct appeal, that allegation has been waived. 22 O.S.Supp. 1995, § 1089(D)(4)(b)(1).]

VII. Rogers was deprived of the opportunity to submit mitigating evidence vital to an accurate determination of the sentence considered in his case, in violation of the eighth Amendment. [Rogers claims both that he raised the issue of denial of funds for an expert, and that he was unable to raise this issue in this way. He cites without discussion *Castro v. Oklahoma*, 71 F.3d 1502 (10th Cir.1995), but has not shown that *Castro* applies or constitutes a new rule or a binding retroactive intervening change in the law. 22 O.S.Supp.1995, § 1089(D)(9). Any issue involving medical records could have been raised earlier and has been waived.]

**10.** *Mitchell v. State*, 934 P.2d 346 (Okl.Cr.1997); *Hatch v. State* 924 P.2d 284 (Okl.Cr.1996).

**11.** —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

**12.** *Walker v. State*, 933 P.2d 327, 338–39 (Okl.Cr. 1997).

**13.** See footnote 9.

**14.** *Rogers*, 890 P.2d at 967–68. Rogers claimed he was entitled to state-funded expert assistance under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

tal deficiencies. Rogers contends that the outcome of both trial and sentencing stages would have been different had the jury heard mental health testimony from a medical expert. Rogers has provided the Court with affidavits to support his claim that determination of these issues, along with his claim of ineffective assistance of trial counsel, require fact-finding outside the direct appeal record. This material constitutes part of the record before us on post-conviction, and we have reviewed it to determine if this issue must be remanded to the district court for a hearing.[15]

 Rogers insists this issue is properly before the Court because the results of a post-conviction neuropsychological examination either show how he was harmed by lack of a medical expert, or justify an evidentiary hearing to develop evidence which would show how he was prejudiced by the trial court's failure to grant funds for experts. Rogers relies on an affidavit from Dr. Gelbort. He argues that Dr. Gelbort's findings and conclusions support his claim that a medical expert was necessary on the issue of mental health, and notes that Dr. Gelbort has formed an opinion on how the outcome of the case may have been affected by the lack of this information at trial. Rogers seems to have mistaken the point of medical examination. Whether, and how, the outcome of a case may have been affected by presentation of evidence is a determination for this Court; in making that determination, we may consider a medical expert's opinion as to a defendant's mental state, including any findings, conclusions, and diagnoses. Although Rogers claims Dr. Gelbort has made a diagnosis of organic brain damage, that is not

reflected in the affidavit. We have considered Dr. Gelbort's affidavit and cannot conclude that it either constitutes a showing sufficient to require appointment of an expert, or raises issues which require an evidentiary hearing. The material presented to this Court neither raises any controverted, previously unresolved factual issue material to the legality of Rogers's confinement, nor supports a conclusion that if it had been presented at trial the outcome would have been different.

 In Proposition IV Rogers claims that newly discovered evidence, coupled with Dr. Gelbort's evidence, requires a new trial. The revised post-conviction procedure act contains no specific provision for review of newly discovered evidence.[16] We will not consider this proposition unless we find that the evidence raises any controverted, previously unresolved factual issue material to the legality of Rogers's confinement. We have already determined that Dr. Gelbort's affidavit does not constitute such evidence. Rogers suggests that his medical records constitute new evidence, but that evidence was discovered by and available to trial counsel. Rogers primarily relies on his recent discovery that Dr. Goodman, the State's mental health expert, who never testified, was largely paid out of a District Attorney's Association fund, and that fund provided the State extra money to prepare for trial. Rogers fails to show why this information could not have been discovered earlier with reasonable diligence.[17] Although Rogers apparently claims the paper trail confirming payment was not made until after the direct appeal was pending, these documents were written in Janu-

---

15. 22 O.S.Supp.1995, § 1089(D)(4)(b)(1). Material submitted to this Court with the original application for post-conviction relief constitutes the record on post-conviction. Section 1089(D)(4)(b)(1) clearly implies that material will be presented to this Court for the first time in order to facilitate claims of ineffective assistance of trial counsel requiring fact-finding outside the direct appeal record. This Court need not remand these claims for an evidentiary hearing if our review of the materials presented shows that the material either (1) does not require fact-finding outside the appeal record, or (2) contains no controverted, previously unresolved issues of fact material to a petitioner's confinement. If we determine that either of these conditions exists,

we will remand the issue for a hearing in the district court, as required by § 1089(D)(5).

16. 22 O.S.Supp.1995, § 1089(D)(9) provides for review of claims where the factual basis was not previously ascertainable through the exercise of reasonable diligence. In addition, we will consider issues which could be raised under 22 O.S.Supp.1995, § 1080, applied within the scope of revised § 1089. Rule 9.7(B)(1), *Rules of the Court of Criminal Procedure*, 22 O.S.Supp.1996, Ch. 18, App.

17. 22 O.S.Supp.1995, § 1089(D)(9).

ary and February, 1992, before Rogers's brief on direct appeal was filed. This issue has been waived, and this proposition is denied.[18]

■ In Proposition V Rogers alleges that he received ineffective assistance of trial counsel because his confession was admitted without a *Jackson v. Denno*[19] hearing. Ineffective assistance of trial counsel claims raised in capital post-conviction appeals are waived unless they require fact-finding outside the direct appeal record.[20] Rogers has failed to demonstrate that the facts supporting his trial counsel ineffectiveness claim were not available to his direct appeal attorney. Accordingly, this claim has been waived.

■ Rogers next asserts that his direct appeal attorney was ineffective for failing to raise the *Jackson–Denno* issue. In assessing claims of ineffective assistance of appellate counsel, our threshold inquiry is whether counsel actually committed the act giving rise to the allegation.[21] As the record confirms appellate counsel failed to raise the *Jackson–Denno* issue on appeal, we ask whether this omission was deficient under the first prong of the two-pronged test in *Strickland.*[22]

Rogers presents no facts showing that counsel's conduct in failing to raise this argument on direct appeal was unreasonable under the circumstances or did not fall within the wide range of professional assistance. Counsel's mere failure to raise an arguably meritorious claim will not, standing alone, constitute ineffective assistance.[23] Rogers has not established that appellate counsel was ineffective for failing to raise this issue. Roger's substantive claims concerning his statements to police remain procedurally barred and are not considered on their merits.[24] We do not find that, if these allegations of ineffective assistance were true, appellate counsel's performance would constitute the denial of reasonably competent assistance under prevailing professional norms.[25] This proposition is denied.

■ Rogers also requests an evidentiary hearing and post-conviction discovery. Neither are required on post-conviction, but if we determine that controverted, previously unresolved factual issues material to the legality of the applicant's confinement may exist, we may issue any orders necessary to facilitate post-conviction review.[26] Rogers requests an evidentiary hearing on each issue raised in the Application and states that he

18. Rogers's brief includes in this proposition an extensive discussion of the facts surrounding the propriety of the trial court's action in ordering a psychiatric examination for sanity as well as competency (raised separately as Proposition II). Rogers notes that the State's expert apparently gave Rogers an MMPI test in 1991, states Rogers never received the results of that test, and explicitly assumes that, as Dr. Gelbort gave Rogers an MMPI test in 1996, the results must be (1) the same, and (2) exculpatory. Making this assumption he claims that failure to provide him with the 1991 results violated the State's duty to provide him with exculpatory information under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This claim is pure speculation and we will not consider it. In this proposition, Rogers's brief also alleges ineffective assistance of trial and appellate counsel for failing to raise an insanity defense. Rogers did not include this claim of ineffective assistance of counsel anywhere in his Application for Post–Conviction Relief, and the allegation contained in his brief is not properly before us.

19. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), established a defen-

dant's right to an **in camera** hearing on the voluntariness of his confession.

20. 22 O.S.Supp.1995, § 1089(D)(4)(b)(1).

21. *Walker*, 933 P.2d at 333 sets forth the three tiered procedural scheme under which we review these claims. We (1) determine whether counsel actually committed the act giving rise to the allegation, and (2) if so, ask whether counsel's performance was deficient under prevailing professional norms. If the petitioner sets forth facts and law enabling us to assess counsel's allegedly deficient performance, we may consider the mishandled substantive claim, and will ask (3) whether the substantive claim meets the statutory requirements for review under 22 O.S.Supp.1995, § 1089.

22. 466 U.S. 668, 677–78, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674; *Walker*, 933 P.2d at 333–36.

23. *Walker*, 933 P.2d at 334.

24. *Id.* 933 P.2d at 334.

25. 22 O.S.Supp.1995, § 1089(D)(4)(b)(2).

26. 22 O.S.Supp.1995, § 1089(D)(3).

would present expert medical testimony and evidence in mitigation as he has described in the Application. We have already determined that allegations based on the medical evidence raised in the Application do not require an evidentiary hearing. Rogers requests discovery of Dr. Goodman's report of Rogers's court-ordered mental health examination. Rogers acknowledges that this report does not appear to exist. He has not shown that, if it exists, its contents would raise any controverted, material factual issues. Rogers has not overcome the presumption of compliance with earlier discovery orders or shown that this material would have resulted in a different trial outcome.[27] We have reviewed the materials presented in support of these requests, and find that neither discovery nor an evidentiary hearing are necessary to resolve Rogers's post-conviction claims. The requests for an evidentiary hearing and discovery are denied.

We have carefully reviewed Rogers's applications for post-conviction relief, discovery and an evidentiary hearing, and find that he is not entitled to relief. The Application for Post–Conviction Relief, Application for an Evidentiary Hearing and Motion for Discovery are **DENIED.**

STRUBHAR, V.P.J., and JOHNSON, J., concur.

LUMPKIN, J., concurs in result, and LANE, J., dissents.

LUMPKIN, Judge: concurs in result:

I concur, based on *stare decisis*, in the discussion dealing with ineffective counsel. *See Walker v. State*, 933 P.2d 327, 341–43 (Lumpkin, J., concurs in result). I also write separately to further discuss briefly the so-called first "prong" of the test this Court uses for ineffective counsel in post-conviction proceedings.

This case, together with the other cases applying the *Walker* methodology, graphically illustrates the point I made in *Walker*. Simply requiring a petitioner show "appellate counsel actually committed the act which gave rise to the ineffective assistance allega-

tion," *Walker* at 333, is in reality—at least on the surface—no requirement at all, and does nothing to differentiate one case from another. As I do not believe this Court actually committed time and resources toward the formulation of a test the first part of which is essentially worthless, I must conclude there is more to this first "prong" than meets the eye. There must be more of a requirement to satisfy the prong than merely allowing post-conviction counsel to raise it in the brief.[1] For instance, the "prong" would have more meaning if a petitioner were required to show, in connection with the ineffective counsel allegation, that some objective factor external to the defense prevented counsel from raising the claim in the direct appeal or in a timely motion for new trial. *See, e.g., McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

I need not get into an extensive discussion at this point. Suffice it to say here that, as more cases are presented to this Court, it may become necessary to elucidate with more precision exactly what requirements must be met to satisfy the first prong of this new test.

LANE, Judge, dissents.

I dissent and would remand this case to the trial court for a proper determination of competency for the same reasons I dissented in *Walker v. State*, 933 P.2d 327 (Okl.Cr. 1997).

---

**27.** Rule 9.7(D)(3), *Rules of the Court of Criminal Procedure*, 22 O.S.Supp.1996, Ch. 18 App.

**1.** We require citation of authority and specific references to the record to successfully raise an issue on appeal in all other cases or it is waived. The same should be required here.