Sidney Soren SCOTT, Petitioner,

v.

STATE of Oklahoma, Respondent.

No. PC–96–1270.

Court of Criminal Appeals of Oklahoma.

July 11, 1997.

Randy A. Bauman, Deputy, Capital Post Conviction, Norman, for Petitioner.

## OPINION DENYING APPLICATION FOR POST–CONVICTION RELIEF AND REQUESTS FOR AN EVIDENTIARY HEARING AND DISCOVERY

STRUBHAR, Vice Presiding Judge:

Sidney Soren Scott, Petitioner, was tried by jury in the District Court of McIntosh County, Case No. F–90–34, before the Honorable J.M. LeMasters, Jr., Associate District Judge, and convicted of Murder in the first degree[1] for the death of Henry Mattocks.[2] The jury found two (2) aggravating circumstances[3] and recommended death. The trial court sentenced Scott accordingly. Scott appealed his Judgment and Sentence to this Court and we affirmed. *Scott v. State,* 891 P.2d 1283 (Okl.Cr.1995). Scott subsequently filed a Petition for Rehearing which we denied on June 6, 1995.[4] The United States Supreme Court denied Scott's petition for a writ of certiorari on January 16, 1996.

*Scott v. Oklahoma,* — U.S. —, 116 S.Ct. 784, 133 L.Ed.2d 735 (1996).

■ On October 14, 1996, Scott filed in this Court an original application for post-conviction relief together with requests for discovery and an evidentiary hearing.[5] The issues that may be raised, as well as our scope of review, in this matter are narrowly defined as follows:

The only issues that can be raised in post-conviction are those which were not or could not have been raised in a direct appeal and support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent. On review, this Court must determine whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, whether the applicant's grounds were or could have been previously raised, and whether relief may be granted.... This Court will not consider an issue which was raised on direct appeal and is therefore barred by *res judicata,* nor will we consider an issue which has been waived because it could have been raised on direct appeal but was not.

*McGregor v. State,* 935 P.2d 332, 333–34 (Okl. Cr.1997) (footnotes omitted). Based on the foregoing precepts, we will not review the claims raised in Propositions III,[6] IV,[7] VII,[8]

---

1. 21 O.S.Supp.1989, § 701.7(A).

2. For a recitation of the facts, see *Scott v. State,* 891 P.2d 1283, 1287–88 (Okl.Cr.1995).

3. [1] the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and [2] the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1981, §§ 701.12(5) and (7).

4. On June 6, 1995, this Court entered an Order withdrawing its original denial of rehearing dated April 13, 1995 and reissued the denial of rehearing because Scott did not receive notice of the April 13, 1995 Order. *See Scott v. State,* Case No. F–90–1195 (Okl.Cr. June 6, 1996) (unpublished order).

5. Title 22 O.S.Supp.1995, § 1089(D)(1) provides that an original application for post-conviction

relief shall be filed with this Court. The recent amendments to the Post–Conviction Procedure Act do not require the State to respond to the original application and no State response was filed. While Scott's application was filed outside the time limits set forth in section 1089(D)(1), the application was timely filed according to the briefing schedule this Court issued in *Sahib Al-Mosawi et al v. State,* Case No. F–94–433 (Okl.Cr. April 30,1996) (unpublished order).

6. Proposition III: Petitioner was deprived of required jury instruction on his defense of diminished capacity and on lesser included offenses of manslaughter and second degree murder.

7. Proposition IV: Mr. Scott was unconstitutionally deprived of experts necessary for his defense.

8. Proposition VII: The prosecutor's argument was improper, inaccurate, and inflammatory.

IX,[9] X,[10] XI,[11] XII[12] or XIII[13] because these claims are waived, i.e. the claims could have been raised on direct appeal but were not.

■ In a proposition labeled preliminary concern, Scott challenges the constitutionality of the recent amendments to the Post–Conviction Procedure Act. He urges this Court to reconsider whether the new post-conviction scheme, both on its face and as applied, denies applicants due process, equal protection, equal and adequate access to the courts or violates the Ex Post Facto Clause. We have consistently rejected this constitutional attack on Oklahoma's current capital post-conviction procedure and we are not persuaded by Scott's argument to hold otherwise. *Mitchell v. State,* 934 P.2d 346, 349 (Okl.Cr.1997); *Rogers v. State,* 934 P.2d 1093, 1096 (Okl.Cr.1997); *Walker v. State,* 933 P.2d 327, 330 (Okl.Cr.1997); *Hatch v. State,* 924 P.2d 284, 289–293 (Okl.Cr.1996). Accordingly, this proposition is denied.

■ In his first proposition, Scott argues that the "clear and convincing" burden of proof applied in the trial court's evaluation of his competency to stand trial violates his right to due process. To support his claim, Scott cites *Cooper v. Oklahoma,* — U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), in which the United States Supreme Court held that Oklahoma's competency scheme that required defendants to prove their incompetence by "clear and convincing" evidence violated due process. This Court has declined to apply *Cooper* on post-conviction review. *McGregor,* 935 P.2d at 334; *Rogers,* 934 P.2d at 1096; *Mitchell,* 934 P.2d at 349; *Walker,* 933 P.2d at 339. As such, this proposition is denied.

In his second proposition, Scott claims the prosecution failed to disclose exculpatory evidence material to the defense in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He argues that this claim could not have been raised on direct appeal because the withheld exculpatory evidence was recently discovered during post-conviction investigation. He further maintains that this withheld exculpatory evidence supports the conclusion that the outcome of the trial would have been different if the exculpatory evidence had been disclosed and/or that the defendant is factually innocent.

First, Scott complains about a letter disclosed after trial in which Neal Rinker writes that he cut an unknown old man's throat at some unknown time and place. This letter was the subject of a motion for new trial. The trial court concluded that the letter was not exculpatory. This ruling was not pursued on direct appeal, but could have been. Accordingly, this portion of the claim is waived and further review is precluded. 22 O.S.Supp.1995, § 1089(C).

■ Next, Scott claims he has recently discovered that J.C. Marshall overheard Rinker confess to Charlotte Rinker that he killed Mattocks. In an affidavit, Marshall claims that he told two officers about the conversation and the officers told him that the conversation was hearsay and that they would not need Marshall at trial.

Under the revised post-conviction procedure act, Scott must show that this claim was not and could not have been raised on direct appeal and that it supports a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent. 22 O.S.Supp. 1995, § 1089(C)(1) & (2). We have carefully reviewed this allegation, but are unable to conclude that this claim could not have been

9. Proposition IX: The competency determination in this case was unreliable.

10. Proposition X: Mr. Scott's death sentence is constitutionally flawed because evidence of a prior escape conviction was used to support that sentence and/or because the "avoid arrest" aggravator does not withstand constitutional scrutiny.

11. Proposition XI: The trial court erred by admitting photographs of the victim that were more prejudicial than probative in violation of Mr.

Scott's right to a fair sentencing proceeding and due process of law as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

12. Proposition XII: Reversible error occurred when the prosecution presented unadjudicated offenses allegedly committed by Mr. Scott to support the continuing threat aggravator.

13. Proposition XIII: The election battle between the trial judge and Defense Counsel Mowery tainted the proceedings; the judge should have recused.

raised on direct appeal. Moreover, we are unable to conclude that this claim would have changed the outcome of the trial or that it supports the conclusion that Scott is factually innocent since three witnesses excluding Rinker testified that Scott confessed to them the morning after the murder. Accordingly, this proposition is denied.

In his fifth proposition, Scott argues that he was denied his right to the effective assistance of appellate counsel. Scott complains that counsel failed to raise two claims that mandated relief as well as various others. As such Scott maintains that he can show appellate counsel was deficient and that he was prejudiced by the deficient performance.[14]

■ "Ineffective assistance of appellate counsel claims are properly before us only if the Court finds that if the allegations were true, the performance of appellate counsel would constitute the denial of reasonably competent assistance of appellate counsel under prevailing professional norms." *McGregor*, 935 P.2d at 335. We analyze appellate counsel ineffectiveness claims using the three-tiered scheme set forth in *Walker*, 933 P.2d at 333.

Scott argues appellate counsel was deficient because she failed to raise the following substantive claims: [1] exculpatory evidence was withheld from the defense (also raised in Proposition II); [2] required instructions on voluntary intoxication, second degree murder and first degree manslaughter were omitted from the jury charge (also raised in Proposition III); [3] the trial court utilized an erroneous burden of proof in the competency proceeding and the competency determination was unreliable (also raised in Propositions I & IX); [4] Scott was deprived of experts necessary to his defense (also raised in Proposition IV); [5] trial counsel was ineffective (also raised in Proposition VI); [6] prosecutorial misconduct (also raised in Proposition VII); [7] the State used duplica-

tive aggravating circumstances (also raised in Proposition VIII); [8] the "avoid arrest" aggravator is unconstitutional (also raised in Proposition X); [9] improper gruesome photographs were admitted (also raised in Proposition XI); and [10] the trial judge was biased (also raised in Proposition XIII).

■ The record reveals that appellate counsel failed to raise the substantive claims listed above. As such Scott has satisfied our threshold inquiry and established that appellate counsel actually committed the conduct giving rise to the allegations of ineffective assistance. *McGregor*, 935 P.2d at 336. We thus reach the next level of inquiry, which is whether appellate counsel's omission of these claims constituted deficient performance of appellate counsel. *Walker*, 933 P.2d at 335. To support his contention that appellate counsel's performance was deficient under prevailing professional norms, Scott has submitted an affidavit from appellate counsel stating that she was not given any formal training when she joined the Oklahoma Indigent Defense System, that Scott's brief was the second brief she had written, that in addition to Scott's case she was given a full caseload and was extremely busy during the briefing time of Scott's appeal, that she was the primary caretaker of her terminally ill father who died two months prior to the filing of Scott's brief, that the death of her father had a profound effect upon her, that she "missed" the issues concerning intoxication and lesser offense instructions, prosecutorial misconduct and lack of expert assistance at trial and that she misunderstood the law concerning the claims of withholding exculpatory evidence and trial counsel ineffectiveness. *See* Exhibit G. Scott also submits an affidavit from appellate counsel Lee Ann Jones Peters who states that appellate counsel Walker's performance fell below reasonable professional norms. *See* Exhibit H.

■ As we stated in *Walker*, we require post-conviction applicants to "set forth suffi-

---

14. Scott was initially represented on direct appeal by Carol A. Walker. Walker wrote and filed Scott's direct appeal brief. Walker subsequently transferred to the Executive Division of the Oklahoma Indigent Defense System whereupon Lee Ann Jones Peters was assigned to Scott's case. Peters argued the case on appeal and attempted to add supplemental propositions of error for review. Peters' requests were denied. Scott challenges the effectiveness of counsel Walker only.

cient facts and law to enable this Court to fully assess appellate counsel's allegedly deficient performance." *Walker*, 933 P.2d at 333. "When a criminal defense attorney attests to his or her own ineffectiveness in an effort to obtain relief for a capital post-conviction applicant, that affidavit will be thoroughly scrutinized and will rarely, if ever, be solely relied upon to support an allegation of deficient performance." *Walker*, 933 P.2d at 336. Here, Walker's affidavit supplies the only evidence that her judgment in Scott's direct appeal was compromised because of her inexperience, inadequate training, overburdened case load and personal problems.

A review of the record shows appellate counsel raised seven relevant, well-reasoned issues for this Court to consider and address on appeal. In two of the propositions of error raised, this Court found error, but concluded relief was not warranted. *Scott*, 891 P.2d at 1292–93. After evaluating appellate counsel's performance from counsel's perspective at the time, indulging in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing that there are countless ways to provide effective assistance, we find Scott has failed to supply this Court with sufficient law and facts for us to conclude that appellate counsel was deficient. *Walker*, 933 P.2d at 335. Because Scott has failed to show that appellate counsel's conduct on direct appeal was ineffective, his substantive claims remain procedurally barred and will not be considered on the merits. *McGregor*, 935 P.2d at 336.

In his sixth proposition of error, Scott claims he was denied his right to the effective assistance of trial counsel because his trial attorney was deficient in the following ways: counsel failed to adequately investigate mitigating evidence and prepare for second stage; counsel failed to ensure the jury was fair and impartial; counsel failed to consult with any mental health experts concerning Scott's mental state or Scott's past incidents of physical abuse and substance abuse; counsel failed to investigate and present evidence relevant to mitigating circumstances and to rebut the State's alleged aggravating circumstance of continuing threat; counsel

failed to consult with experts concerning the effects of alcohol and drugs on Scott the night of the murder; and, counsel failed to adequately object to trial errors, request appropriate admonitions, move for mistrial and otherwise preserve error.

▪ Scott's allegation of ineffective assistance of trial counsel does not depend on facts outside the record on appeal. "[I]neffective assistance of trial counsel claims are properly raised and may be [reviewed on the merits] on post-conviction only if they are based upon facts which were not available to the applicant's direct appeal attorney and thus could not have been made part of the direct appeal record." *Walker*, 933 P.2d at 332. While some of the facts in support of this claim are not in the direct appeal record, there is no evidence these facts were not available on direct appeal. "The statutory phrase 'fact-finding outside the direct appeal record' was never meant to negate the principle of waiver." *McGregor*, 935 P.2d at 335. Because Scott's ineffective assistance of trial counsel claim does not turn on facts unavailable at the time of his direct appeal, he has failed to meet the pre-conditions for review of his claim on the merits and therefore review of the claim is barred. *Id.*

▪ In Scott's eighth proposition of error, he claims that the State improperly used duplicative aggravating circumstances to obtain his death sentence in violation of *U.S. v. McCullah*, 76 F.3d 1087 (10th Cir.1996). Because Scott did not challenge the use of allegedly duplicative aggravating circumstances on direct appeal, he has waived this issue for purposes of capital post-conviction review unless he can show that this claim could not have been raised in his direct appeal. Scott maintains that this claim may be reviewed on the merits because *McCullah* constitutes an intervening change in law.

Under section 1089, Scott's current challenge could not have been raised in his direct appeal "if the legal ground supporting it either was not recognized by a court as precedent at the time of his direct appeal or is a new rule of constitutional law which has been given retroactive effect." *Walker*, 933 P.2d at 339. We find that Scott's challenge attacking the duplicative use of aggravating

circumstances was either recognized by or could have been reasonably formulated from a final decision of this Court. *See McCracken v. State,* 887 P.2d 323, 331 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995) (holding the aggravating circumstances that the murder was committed by a person serving a sentence of imprisonment on conviction of a felony and continuing threat were not duplicative because each of the aggravating circumstances was supported by different evidence); *Robedeaux v. State,* 866 P.2d 417, 434–35 (Okl.Cr.1993), *cert. denied,* 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994) (holding aggravating circumstances are only duplicative when they cover the same aspect of the defendant's criminal history); *Pickens v. State,* 850 P.2d 328, 336 (Okl.Cr.1993), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994) (holding aggravating circumstances of "prior violent felony" and "continuing threat" were not duplicative and therefore the weighing process was not skewed); *Woodruff v. State,* 846 P.2d 1124, 1146 (Okl.Cr.), *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993) (holding aggravating circumstances of "prior violent felony" and "continuing threat" were not duplicative); *Green v. State,* 713 P.2d 1032, 1040 (Okl.Cr.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986), *overruled on other grounds, Brewer v. State,* 718 P.2d 354 (Okl.Cr.1986) (holding aggravating circumstances are only duplicative when they cover the same aspect of the defendant's criminal history). We further find that *McCullah* is not a new rule of constitutional law as defined in *Walker,* 933 P.2d at 339. Accordingly, this proposition is waived.

Scott finally claims in his fourteenth proposition of error that the cumulative effect of the errors presented in this application coupled with the errors found on direct appeal require a new trial. Because we have found that the claims raised in this petition are either procedurally barred or without merit, we find no cumulative error that warrants relief. *Mitchell,* 934 P.2d at 351.

█ We now turn to Scott's request for leave to amend and supplement this application and his requests for an evidentiary hearing and discovery. First Scott claims he should be allowed leave to amend and supplement this application if this Court finds that these claims do not warrant relief. As we stated in *Cannon v. State,* 933 P.2d 926, 929–30 (Okl.Cr.1997):

> [w]e must emphasize again the legislature's intent to impose narrow and restrictive limits on the scope of post-conviction review. The amended post-conviction act and our Rules prohibit any amendment or supplementation of an application after the deadlines provided by statute, and provide that any proposed supplementation shall be treated as a subsequent application. The amended post-conviction act would allow subsequent applications only where a petitioner can establish that the issues raised in a subsequent application were factually or legally unavailable at the time of the original application. This Court has no authority to grant any petitioner leave to supplement or amend an original application for relief. (footnotes omitted).

Based on *Cannon,* we deny Scott's request for leave to amend or supplement this application.

█ Scott also requests discovery and an evidentiary hearing. Should this Court determine that controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, we may issue any orders necessary to facilitate post-conviction review. *LaFevers v. State,* 934 P.2d 356, 360 (Okl.Cr.1997). We have reviewed the materials submitted in support of these requests and find that Scott is not entitled to discovery or an evidentiary hearing because we find no controverted, previously unresolved factual issues material to the legality of Scott's confinement exist. As such, these requests are denied. After carefully reviewing Scott's application for post-conviction relief and requests for discovery and an evidentiary hearing, we find that Scott is not entitled to relief. Accordingly, Scott's Application for Post–Conviction Relief and Application for an Evidentiary Hearing and Discovery are **DENIED**.

CHAPEL, P.J., concurs in result.

LUMPKIN, J., specially concurs.

LANE and JOHNSON, JJ, concur.

LUMPKIN, Judge, specially concurring:

I agree that Petitioner's Application should be denied. However, as this Application presents what I consider to be a recurring problem in post-conviction applications, I write separately to explain how an application is reviewed in this Court. Specifically, I refer to the attempts here (as well as in other applications) to circumvent the Rules of this Court by "hiding" arguments or authorities in places other than the Arguments and Authorities Section of the Application.

Our Rules specifically state that the application

shall be in substantial compliance with Form 13.11 and contain:

(a) Whether the application is an original or a subsequent application for post-conviction relief;

(b) The district court case from which review is being sought, including the case number at trial;

(c) A ***procedural*** history of the case, including proceedings in the district court;

(d) A copy of the judgment and sentence of the district court and the death warrant, if an original application, or copies of earlier post-conviction applications, if a subsequent application;

(e) The case number of the petitioner's direct appeal, together with the dates the direct appeal brief-in-chief and/or reply brief were filed if an original application;

(f) Any supplementary materials and discovery requests submitted in accordance with subsection 9.7(D) of this Rule;

(g) Argument and authority in the same manner as direct appeal briefs, attached as an addendum. See Rule 3.5; and

(h) A certified copy of the district court's determination of indigency, if applicable, together with a statement of any changes in financial condition since the date of determination.

Rule 9.7(A)(3), 22 O.S.Supp.1996, Ch.18, App., *Rules of the Court of Criminal Appeals* (emphasis added). Also important here, our Rules specifically limit the argument and authorities section of an application to fifty (50) pages. Rule 9.7(A)(4), 22 O.S.Supp.1996, Ch.18, App., *Rules of the Court of Criminal Appeals*.

Form 13.11 is, of course, not specifically designed for capital post-conviction applications, and this Court realizes that. However, the purpose of requiring a capital post-conviction application to be "in substantial compliance" is to allow this Court to quickly review and "get a feel" for what is contained in the arguments and authorities section. Regrettably, Petitioner's Application does the reverse. The Application itself is 63 pages long, 14 pages longer than the Arguments and Authorities Section of the Application.

The application itself contains Part A of Form 13.11; a statement of the case; and Part B of Form 13.11. Those are all in compliance with this Court's Rules, and are well presented.

However, the Application also contains a "summary of post-conviction claims," which in reality is nothing more than argument. The Application itself is not supposed to contain argument; that is reserved for the Argument and Authorities Section of the Application. It also contains 19½ pages of what are termed "facts as presented on direct appeal." No such provision is made for a restatement of facts in the Application. Also contained in the heart of the Application itself is a request for extension of time to amend. This is not the proper place for such a request.

The most blatant violation of the Rules, however, is found in what is termed "statement of specific facts in support of post-conviction claims," which constitutes 17 pages of the Application. These numbered paragraphs are in reality nothing more than authority for Petitioner's fact-based claims contained in the Argument and Authorities Section. As such, they have no proper place in the Application itself.

I point this out (1) because it appears to be a recurring practice in post-conviction applications presented to this Court; (2) there is no authority for this practice in the Rules of this Court; and (3) as these sections lack any authority for their existence, they are not properly reviewed by this Court. Also, since it appears this type of practice is an attempt to subvert the page limitation provision established by the Rules of this Court, the Court should disregard all argument which exceeds the page limitations or return the application to Petitioner with directions to resubmit in a form which complies with the Court's Rules.