BRORBY, Circuit Judge,
dissenting.
I respectfully dissent from that portion of the majority opinion that holds the Oklahoma Court of Criminal Appeals’ “materiality determination” concerning allegations of planted evidence represents an unreasonable application of clearly established Supreme Court precedent. My difference of opinion is twofold. First, I believe the majority fails to honor the deferential standard of review mandated under the AEDPA. Second, even if we venture beyond the AEDPA standard and substitute our best guess as to the probable impact of the undisclosed evidence on the outcome of Petitioner’s trial, Mr. Hawkins’ statements concerning multiple hair sample collections, and his recollection of a deceased co-workers’ comments concerning the detectives’ unusual entry into the Petitioner’s home following those collections, in no way undermine my confidence in the jury’s verdict. Accordingly, I am unable to conclude the Oklahoma Court of Criminal Appeals was unreasonable in reaching the same conclusion.
I have no quarrel with the substantive law underlying Petitioner’s Brady claim or the standard of review we apply to that claim. It is well settled (1) “the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment”; (2) “evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different”; and (3) “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Pennsylvania v. Ritchie, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987) (quotation marks and citations omitted). Because the Oklahoma Court of Criminal Appeals considered Petitioner’s evidence in support of his planted evidence claim, and rejected that claim on the merits, it is further settled under the AEDPA that we may disturb the Oklahoma court’s ruling only if it is “contrary to,” or involves “an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). As the majority acknowledges, the AEDPA mandates that we increase the degree of deference afforded state court adjudications. See Boyd v. Ward, 179 F.3d 904, 912 (10th Cir.1999). My quarrel lies with what I deem to be the majority’s misapplication of the AEDPA standard.
The majority recites the appropriate standard, but then concludes, without further reference to or analysis of the Oklahoma Court of Criminal Appeals’ ruling, that because the “State’s case against petitioner was entirely circumstantial,” and the “existence and cross-transference of the fiber and hair evidence was crucial to *1182 the State’s case,” the Petitioner’s allegations that police officers planted hair and fiber evidence, if proved, “would be material,” thus creating a reasonable probability that the result of Petitioner’s trial would have been different.[1] As I understand our role under the federal habeas statutes, this court is not to reevaluate the evidence or second-guess the Oklahoma court’s conclusion, but rather, must simply determine whether the Oklahoma court reasonably applied the appropriate federal constitutional standard to the facts or evidence presented.
It is clear the Oklahoma Court of Criminal Appeals applied precisely the same legal standard to evaluate the materiality of the Petitioner’s proffered evidence of planted hair and fiber samples as that applied by the United States Supreme Court. After considering Mr. Hawkins’ affidavits, the Oklahoma Court of Criminal Appeals concluded that, when “evaluated in the context of the entire record,” Mr. Hawkins’ statements were “not material,” and did not “create a reasonable probability that the trial’s outcome would be changed.” Moore v. State, 889 P.2d 1253, 1258 (Okla.Crim.App.), cert. denied, 516 U.S. 881, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995). Although we might have benefited from a more extensive discussion of the relative weight of that evidence compared to the rest of the evidence, in my view, the Oklahoma Court of Criminal Appeals unquestionably applied the correct rule of law and did not unquestionably err in its • characterization of Mr. Hawkins’ statements or its ultimate disposition of this fact-dependent issue. To delve beyond this analysis is to substitute this court’s speculation as to the outcome of Petitioner’s trial for the considered opinion of the Oklahoma Court of Criminal Appeals. I do not believe the AEDPA sanctions such interference. See 28 U.S.C. § 2254(d)(1); see also Kyles v. Whitley, 514 U.S. 419, 456-58, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (Scalia, J. dissenting) (recognition, even prior to AEDPA-mandated deference, “that responsibility for factual accuracy, in capital cases as in other cases, rests elsewhere — with trial judges and juries, state appellate courts, and the lower federal courts”).
Notwithstanding my hesitation to delve further, I simply do not believe there exists a reasonable probability the disclosure of Mr. Hawkins’ statements to the defense would have changed the outcome of Petitioner’s trial. The materiality of undisclosed favorable evidence “must be evaluated in the context of the entire record.” United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). “It is simply not enough to show that the undisclosed evidence would have allowed the defense to weaken, or even to destroy the particular prosecution witnesses or items of prosecution evidence to which the undisclosed evidence relates.” Kyles, 514 U.S. at 460, 115 S.Ct. 1555 (Scalia, J. dissenting). The Petitioner must demonstrate that “in light of all the evidence, including that untainted by the Brady violation, it is reasonably probable that a jury would have entertained a reasonable doubt regarding petitioner’s guilt.” Id. (citing United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Agurs, 427 U.S. at 112-13, 96 S.Ct. 2392).
To the extent Mr. Hawkins’ statements reflect his personal knowledge of the integrity of the detectives’ investigation of Ms. Gilbert’s death, he states only that the detectives returned to the funeral home on three separate occasions to obtain samples *1183 of the victim’s pubic, scalp and limb hairs, that they should have plucked instead of cut the hairs the first time, and that they took up to two and one-half hours to obtain additional evidence on the third visit. He further claims the hair samples were undoubtedly affected by the embalming process, and he witnessed an open window at the Petitioner’s home on two occasions after the detectives’ second and third visits to the funeral home. These facts, even accepted as true, simply do not constitute material evidence to support Petitioner’s claim the police planted evidence. As the majority points out, the remainder of Mr. Hawkins’ statements reflect his recollection of a now deceased co-worker’s comments concerning the co-worker’s alleged surveillance of the detectives’ activity following their second visit to the funeral home. Here again, even accepting this obvious hearsay evidence as true, it simply does not undermine my confidence in the outcome of Petitioner’s trial.
For all these reasons, I would affirm the district court’s denial of habeas relief on Petitioner’s Brady claim.

. In my experience, most habeas petitioners make allegations which, if proved, would change the outcome of their conviction and sentence, and thus could be considered '‘material.” Few, however, present the quality and/or quantity of evidence sufficient to warrant habeas relief. It is for this reason a federal habeas petitioner is entitled to discovery only “if, and to the extent that, the [district court] judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.” Rule 6(a), Rules Governing Section 2254 Cases; see also LaFevers v. Gibson, 182 F.3d 705, 722 (10th Cir.1999).